UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA MENDOZA, et al., an individual, on behalf of herself and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>ELECTROLUX HOME PRODUCTS, INC. et al.,<br><br>        Defendants. | No. 1:20-cv-01133-DAD-BAM<br><br>ORDER GRANTING DEFENDANT'S REQUEST TO SEAL<br><br>(Doc. No. 223) |

      This matter is before the court on a request to file an exhibit under seal pursuant to Local Rule 141 brought by defendant Midea Microwave and Electrical Appliances Manufacturing Co. Ltd. ("Midea China"). (Doc. No. 223.) Defendant Midea China requests the court's permission to file under seal two documents attached as Exhibit 5 to a declaration in support of motions to dismiss filed by defendants Midea America Corporation ("Midea America") and Midea China. (Doc. Nos. 199; 201; 223 at 2; 220 at 5.) In addition to defendant Midea China's notice of request to seal, which is publicly filed on the court's docket, Midea China has also separately provided the court with the exhibit defendant Midea China seeks to file under seal. (*See* Doc. Nos. 223; 220-3.) Pursuant to Local Rule 141, on January 29, 2021, plaintiffs Erika Mendoza and James Hunt ("plaintiffs") submitted to the court an opposition to defendant Midea China's request

("Opp'n"). Having reviewed the exhibit that Midea China seeks to file under seal as well as plaintiffs' opposition to Midea China's request to seal, the court will grant Midea China's request.[1]

## LEGAL STANDARD

All documents filed with the court are presumptively public. *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public."). "Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).

Two standards generally govern requests to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010). The standards used are based on the type of motion to which the documents to be sealed are attached:

> [J]udicial records attached to dispositive motions [are treated] differently from records attached to non-dispositive motions. Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that "compelling reasons" support secrecy. A "good cause" showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions.

*Kamakana*, 447 F.3d at 1180 (citations omitted). The reason for the two different standards is that "[n]ondispositive motions are often unrelated, or only tangentially related, to the underlying

---

[1] Defendants Midea China and Midea America have each filed separate motions to dismiss in this action. (Doc. Nos. 199, 201.) In its reply brief in support of its pending motion to dismiss, defendant Midea America states that "[p]laintiffs' consolidated Opposition repeatedly conflates Midea America and Midea China as the 'Midea Defendants' . . . . Because Midea America and Midea China are separate and distinct entities, Midea America files this separate Reply Brief to address issues unique to Midea America and to disentangle what Plaintiffs have conflated." (Doc. No. 220 at 2.) However, defendant *Midea China* filed the pending request to file under seal, despite the fact that the request pertains to a declaration attached only to defendant *Midea America's* reply brief in support of Midea America's pending motion to dismiss. (Doc. Nos. 223; 220-2 at 6–7.) The declaration itself is titled "Supplemental Declaration of Gerard P. Dietrich *in Support of Midea China's and Midea America's Motions to Dismiss*." (Doc. No. 220-2 at 1 (emphasis added).)

2

cause of action, and, as a result, the public's interest in accessing dispositive materials does not apply with equal force to non-dispositive materials." *Pintos*, 605 F.3d at 678 (quotations omitted).

Under the "compelling reasons" standard applicable to dispositive motions:

> [T]he court must conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.

*Id.* at 1178–79 (internal quotation marks, omissions, and citations omitted). The party seeking to seal a judicial record bears the burden of meeting the "compelling reasons" standard. *Id.* at 1178; *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

"In general, 'compelling reasons' sufficient to . . . justify sealing court records exist when such 'court files might . . . become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* "The 'compelling reasons' standard is invoked even if the dispositive motion, or its attachments, were previously filed under seal or protective order." *Id.* at 1178–79.

**ANALYSIS**

Because defendant Midea China requests sealing in connection with a motion to dismiss, the "compelling reasons" standard plainly applies. Even under that higher standard, however, the court finds that the exhibit in question should remain sealed.

This putative products liability class action pertains to allegedly defective handles on certain microwaves that were designed, manufactured, marketed, tested, distributed, and/or sold by the various defendants in this action. (Doc. No. 194 at ¶ 1.) On November 30, 2020, defendants Midea China and Midea America each filed motions to dismiss plaintiffs' first amended complaint. (Doc. Nos. 199, 201.) Defendant Midea China now requests an order

1  authorizing it to file under seal Exhibit 5 to the supplemental declaration of Gerhard P. Dietrich in
2  support of Midea China and Midea America's motions to dismiss plaintiffs' first amended
3  complaint.  (Doc. No. 223 at 2.)  The exhibit consists of two agreements between defendant
4  Midea China and third-party Underwriters Laboratories, Inc. ("UL") pertaining to the testing and
5  use of the UL mark on certain products (the "UL Agreements").  (*Id.* at 3.)  According to
6  defendants Midea China and Midea America, plaintiffs received access to these documents when
7  UL produced 2,700 pages of documents in a PDF titled "Agreements with Midea" in response to
8  a subpoena in a related case, *Rice v. Electrolux Prods., Inc.*, No. 4:15-cv-00371 (M.D. Pa.).
9  (Doc. Nos. 223 at 3; 220-2 at 2.)  The parties do not dispute that the documents were marked
10 confidential by UL when the documents were initially produced, or that "[b]y agreement, the
11 parties are allowed to use the documents produced in *Rice* in related litigation, including this
12 case."  (Doc. No 223 at 3; *see also* Opp'n at 3.)

13     Plaintiffs placed the UL Agreements at issue in their first amended complaint in this
14 action, in which they quote the following paragraph ("Paragraph 11.0"), which appears in both
15 UL Agreements:

16 > This Agreement shall be governed by the laws of the State of Illinois, USA without reference to its choice of law principles. Any action related to the Agreement shall be filed in the federal or state court having jurisdiction in Cook County, Illinois, USA. The parties consent of the exercise of personal jurisdiction of that court and shall bear any costs, legal fees and expenses incurred in transferring actions filed elsewhere.

20 (Doc. No. 194 at ¶ 66.)  In its pending motion to dismiss, defendant Midea China asserts that the
21 quoted choice of forum provision is irrelevant to this action and does not establish that personal
22 jurisdiction exists over Midea China in the state of California, particularly because "the
23 agreement does not mention California."  (Doc. No. 199 at 7.)  In addition, Midea China quotes
24 the following paragraph from the UL Agreements ("Paragraph 10.0") in its reply in support of its
25 motion to dismiss, which Midea China cites in support of its assertion that "the language in the
26 UL Agreements cannot benefit Plaintiffs":
27 /////
28 /////

4

> No Third Party Beneficiaries. No provisions of this Agreement shall in any way inure to the benefit of any third party, including the public at large. The parties intend that no third party shall have any rights or cause of action under this Agreement.

(Doc. Nos. 223 at 4; 222 at 11.)[2]

In seeking to seal the documents at issue, defendant Midea China first argues that the UL Agreements are "not relevant to the . . . issues raised in this action." (*Id.* at 4 (emphasis in original).) Apart from Paragraphs 10.0 and 11.0, which, as mentioned, are both included unredacted in the briefing filed in connection with the pending motions to dismiss in this action, Midea China contends that "[n]o other provisions in the UL Agreements are arguably relevant to this litigation." (Doc. No. 223 at 4.) Midea China thus seeks to file the UL Agreements under seal "only to demonstrate [to the court] that the UL Agreements . . . . are plainly irrelevant as they both relate to the testing and use of the UL mark and do not mention California." (Doc. No. 223 at 4.)

In its request to seal, Midea China also argues that the UL Agreements contain "competitively sensitive business information that may present a threat of competitive harm if disclosed publicly," such as non-public payment arrangements and negotiated contract terms. (Doc. No. 223 at 3–4.) According to Midea China, "[d]isclosure of these specific terms might harm [UL's] competitive standing and have a chilling effect on its ability to negotiate more favorable similar terms in future agreements with other parties." (*Id.* at 4.) Moreover, Midea China repeats that because the UL Agreements are not relevant to this litigation, and the only paragraphs that could arguably be relevant here—Paragraphs 10.0 and 11.0—are available on the court's docket without redaction, "the public's interest in being informed about this case will not be injured by filing the UL Agreements under seal." (*Id.* at 4–5.)

In opposition, plaintiffs argue that it is merely "conjecture" that trade secrets will be divulged if the UL Agreements are not filed under seal. (Opp'n at 3.) Plaintiffs assert that the pricing provision in the UL Agreements "does not provide specifics and is a generic form

---

[2] Defendant Midea America has also included Paragraphs 10.0 and 11.0 of the UL Agreements in its reply brief in support of its motion to dismiss. (Doc. No. 220-1 at 11.)

paragraph that also appears in the contracts between UL and Electrolux and Sharp Electronics Corp." (*Id.* at 3.) Accordingly, plaintiffs argue that the pricing provision is "not a negotiated provision" and that Midea China's arguments are "based purely" on hypothesis or conjecture. (*Id.* at 3 (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) ("After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.")).) In addition, plaintiffs contend that Midea China's "true goal" in seeking to seal the UL Agreements is "to prevent disclosure of their consent to be subject to personal jurisdiction in Illinois," because "[t]heir business model is to prevent adjudication for defective products they sell in the United States by universally challenging personal jurisdiction and attempting to maintain their business operations to avoid the courts in the United States." (Opp'n at 4.) Finally, plaintiffs contend that because none of the defendants in this action objected to the inclusion of Paragraph 11.0 in plaintiffs' amended complaint, "the relevant provision of these UL contracts already exists in the public forum" and defendants Midea China and Midea America waived any assertion that the UL Agreements should be sealed. (*Id.* at 5.)

    The court finds that defendant Midea China has established a compelling reason to seal Exhibit 5 of Mr. Dietrich's supplemental declaration submitted in this action. The court is unpersuaded by plaintiffs' argument that a lack of specific prices being listed in the UL Agreements necessarily means that the pricing provisions therein are merely "generic form paragraph[s]" and are not negotiated provisions containing sensitive business information. (Opp'n at 3.) A compelling reason to file a document under seal exists "where public disclosure of proprietary business information could harm [the business's] competitive standing and/or result in the improper use of the information by others who might circumvent investing their own time and resources." *Western Air Charter, Inc. v. Sojitz Corp.*, No. 2:18-cv-07361-JGB-MAA, 2019 WL 4509304, at *4 (C.D. Cal. May 2, 2019). Here, the UL Agreements contain nonpublic contract terms that were the final product of negotiations between Midea China and UL. Similarly, plaintiffs' unsupported allegation that the same pricing provisions appear in agreements between UL and other companies—agreements to which plaintiffs have access due to

related litigation, but to which the public and UL's business competitors do not—does not diminish the fact that the publication of these documents could provide a negotiating advantage to UL's business partners or competitors.  (*See* Opp'n at 3); *see also Western Air Charter*, 2019 WL 4509304, at *5 (granting an application to file nonpublic business agreements under seal because "their public dissemination would give [defendant's] future business partners the upper-hand in negotiations of similar deals"); *Interstate Fire and Cas. Co. v. New Hampshire Ins. Co.*, No. 2:12-cv-01237-DGC, 2013 WL 11693771, at *1 (D. Ariz. Apr. 22, 2013) (granting a motion to seal a settlement agreement produced by non-parties in underlying litigation where the non-parties expressed that the settlement terms were confidential); *Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, No. 5:18-cv-01882-JGB-SHK, 2019 WL 3099711, at *2 (C.D. Cal. June 17, 2019) ("Courts also routinely find that non-public financial, pricing, and strategy information could harm litigants' competitive standing and grant motions to seal such information.").

      Moreover, Midea China does not oppose the presence of Paragraph 11.0 of the UL Agreements —the Illinois forum selection clause—on the public docket in this action, and indeed has set forth the full text of both Paragraphs 10.0 and 11.0 in its reply brief in support of its motion to dismiss.  (Doc. No. 222 at 11.)  Thus, plaintiffs' argument that Midea China's true motivation in filing the pending motion is to "prevent disclosure of [its] consent to be subject to personal jurisdiction in Illinois" is unavailing.  Midea China has made no efforts to file under seal the only paragraph of the UL Agreements that bears on personal jurisdiction in Illinois.  (*See* Opp'n at 4.)

      Lastly, the court has read the UL Agreements in their entirety and agrees with defendant Midea China that, apart from Paragraphs 10.0 and 11.0, the contents of the UL Agreements are irrelevant to this action.  Notably, plaintiffs appear to concede that the remainder of the UL Agreements are irrelevant here, referring to Paragraph 11.0 as "the relevant contractual provision" from the UL Agreements and stating that this provision "already exists in the public

/////

/////

/////

forum."[3]  Because the only terms of the UL Agreements that are relevant to this action are already available on the public docket, the court finds that in this instance, the competitive business interests of UL outweigh the public's interest in accessing the entirety of the UL Agreements. *See Tri-Quint Semiconductor, Inc. v. Avago Tech. Ltd.*, No. 2:09-cv-01531-JAT, 2011 WL 4947343, at *3 (D. Ariz. Oct. 18, 2011) (granting a request to seal personnel records pertaining to non-parties where non-parties' confidentiality interests "outweigh[] the public's right of access").

## CONCLUSION

After reviewing the papers submitted by the parties, the court grants defendant Midea China's request to seal.  (Doc. No. 223.)  Defendant Midea China shall provide an electronic copy of the documents to be sealed to the Clerk of the Court by email at ApprovedSealed@caed.uscourts.gov, at which time the Clerk of the Court will file the documents under seal.  *See* Local Rule 141(e)(2)(i).

IT IS SO ORDERED.

Dated:   **April 26, 2022**

UNITED STATES DISTRICT JUDGE

---

[3] This assertion by plaintiffs ostensibly contradicts a different argument made by plaintiffs:  that the UL Agreements are relevant to this products liability action because the results of the product testing Midea China performed pursuant to the UL Agreements were incorrectly reported to UL for five years. (Opp'n at 4–5.)  However, plaintiffs fail to demonstrate how any of the specific terms contained in the UL Agreements (apart from Paragraph 11.0) are relevant here.  Instead, plaintiffs' argument in this regard merely suggests that the existence of a contractual relationship between Midea China and UL is relevant to this action, but not the specific terms underlying that contractual relationship.  As noted above, plaintiffs appear to acknowledge this distinction by, only one sentence after describing the importance of the contracts, stating that "the relevant contractual provision from the UL contracts is quoted in the Amended Complaint." (*Id.* at 5.)