1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  ERIKA MENDOZA, et al., an individual,        No.  1:20-cv-01133-DAD-BAM
    on behalf of herself and all others similarly
12  situated,

13                    Plaintiffs,                ORDER GRANTING, IN PART, MOTIONS
                                                 TO DISMISS BY DEFENDANTS SHARP
14        v.                                     MANUFACTURING COMPANY OF
                                                 AMERICA AND SHARP APPLIANCES
15  ELECTROLUX HOME PRODUCTS,                    THAILAND LIMITED
    INC. et al.,
16                                               (Doc. Nos. 196, 198, 225)
                      Defendants.
17

18

19        This matter is before the court on two pending motions to dismiss filed on behalf of

20  defendants Sharp Manufacturing Company of America and Sharp Appliances Thailand Limited

21  on November 30, 2020.[1]  (Doc. Nos. 196, 198).  Pursuant to General Order No. 617 addressing

22  _____

23  [1]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
    overwhelming caseload has been well publicized and the long-standing lack of judicial resources
24  in this district long-ago reached crisis proportion.  While that situation was partially addressed by
    the U.S. Senate's confirmation of district judges for two of this court's vacancies on December
25  17, 2021 and June 21, 2022, another vacancy on this court with only six authorized district judge
    positions was created on April 17, 2022.  For over twenty-two months the undersigned was left
26  presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants.
    That situation resulted in the court not being able to issue orders in submitted civil matters within
27  an acceptable period of time and continues even now as the undersigned works through the
    predictable backlog.  This has been frustrating to the court, which fully realizes how incredibly
28  frustrating it is to the parties and their counsel.

                                        1

1    the public health emergency posed by the COVID-19 pandemic, defendants' motions were taken

2    under submission on the papers.  (Doc. No. 203.)  For the reasons explained below, the court will

3    grant defendants Sharp Manufacturing Company of America's (Doc. No. 196) and Sharp

4    Appliances Thailand Limited's motions to dismiss (Doc. No. 198), in part.[2]

5                                **FACTUAL BACKGROUND**

6              In their FAC, plaintiffs allege as follows.[3]  Plaintiffs Erika Mendoza and James Hunt are

7    California residents who suffered economic injury as a result of defective "over-the-range"

8    ("OTR") microwaves that were designed, manufactured, marked, distributed, and sold by

9    defendants between 2011–2017.  (Doc. No. 194 at ¶¶ 1, 11, 24, 42, 106; *see also* Doc. No. 213 at

10   24.)  OTR microwaves are microwaves "exclusively designed and specifically intended for

11   installation on a vertical wall directly above the cooking surface of the range."  (Doc. No. 194 at

12   ¶ 2.)  Despite being identified as OTR microwaves, plaintiffs allege that the microwaves at issue

13   (the "Microwaves") were not safe to be used over a cooktop.  (*Id.* at ¶¶ 2–3.)  According to

14   plaintiffs, these Microwaves contain stainless steel handles that reach unsafe temperatures when

15   the cooking surface below is in use.  (*Id.* at ¶ 3.)  This alleged defect "impairs the use of the

16   Microwave's handle and exposes anyone who touches it to a substantial risk of permanent and/or

17   serious injury."  (*Id.*)

18             In support of their contention that the Microwave handles reach unsafe temperatures,

19   plaintiffs rely on the American Society of Testing Materials' Standard Guide for Heated System

20   Surface Conditions that Produce Contact Burn Injuries ("ASTM Standard C1055-03").  (*Id.* at ¶¶

21   4–5.)  Under ASTM Standard C1055-03, which plaintiffs have attached to the FAC, skin contact

22   _____

23   [2]  In this order the court does not address the pending motions to dismiss brought by defendants
     Midea Microwave and Electrical Appliances Manufacturing Co., Ltd. (Doc. No. 199); Midea
24   America Corporation (Doc. No. 201); and Electrolux Home Products Inc., Lowe's Home Center,
     LLC, and Modesto Direct Appliance, Inc. (Doc. No. 202).

25   [3]  Plaintiffs in this case have filed both a redacted version of the FAC and an unredacted version
26   of the FAC under seal, pursuant to an order by the assigned magistrate judge in this case granting
     the parties' stipulation to redact paragraph 76 of the FAC.  (Doc. Nos. 192, 194, 195.)  The court
27   cites to the redacted version of the FAC in this order because it is available on the public docket.
     *See Apple Inc. v. Pystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) (describing the "strong
28   presumption in favor of [public] access" to court records).

1   with any metal which has a temperature in excess of 111 degrees Fahrenheit may cause injury,

2   with the risk of injury and/or pain rising "exponentially with each degree increase" above 111

3   degrees Fahrenheit.  (*Id.* at ¶ 5; Doc. No. 194-1 at 7.)  Plaintiffs allege that the Microwaves

4   exceed the ASTM Standard C1055-03 because their stainless-steel handles reach temperatures in

5   excess of 131 degrees Fahrenheit when the cooktop below is operated.  (Doc. No. 194 at ¶ 6.)

6        In December 2014, plaintiff Mendoza purchased an OTR microwave (a Frigidaire

7   Professional Microwave Oven, Model No. FPMV189KFC, the "Mendoza Microwave") from

8   defendant Modesto Direct Appliance, Inc. ("Modesto") in Modesto, California.  (*Id.* at ¶¶ 11, 13.)

9   Plaintiff Mendoza asserts that when making her purchase, she "relied on the representation that

10  the [Mendoza] Microwave was an [OTR] Microwave," which was represented on her receipt and

11  sales documents.  (*Id.* at ¶¶ 16–17.)

12       In November 2016, plaintiff Hunt purchased an OTR microwave (a Frigidaire Gallery

13  Over-The-Range Microwave Oven, Model No. FGMV175QFA, the "Hunt Microwave") from

14  defendant Lowe's Home Centers, LLC ("Lowe's") in Bakersfield, California.  (*Id.* at ¶ 24.)

15  Plaintiff Hunt also asserts that he "relied on the representation that the [Hunt] Microwave was an

16  [OTR] Microwave," as identified by his receipt and sales documents, when making his purchase.

17  (*Id.* at ¶ 29–30.)  Both plaintiffs Mendoza and Hunt "would not have purchased or would have

18  paid less for their Microwaves if the Handle Defect had been disclosed revealing the Microwaves

19  were not suitable for installation as [OTR] Microwaves as represented."  (*Id.* at ¶ 120.)

20       Defendant Electrolux Home Products, Inc. ("Electrolux") is a Delaware corporation with

21  its principal place of business in North Carolina.  (*Id.* at ¶ 38.)  Electrolux distributes products,

22  including microwaves, under a variety of brand names, including Electrolux, Electrolux ICON,

23  Frigidaire Professional, Frigidaire Gallery, Frigidaire, Eureka, Kelvinator, Sanitaire, Tappan, and

24  White-Westinghouse.  (*Id.* at ¶ 39.)  Plaintiffs allege that Electrolux distributed and sold the

25  Microwaves throughout the United States and continued to sell the Microwaves even after

26  learning of the handle defect.  (*Id.* at ¶¶ 40, 139.)

27       Defendant Midea Microwave and Electrical Appliances Manufacturing Company, Limited

28  ("Midea China") is a manufacturing company incorporated and with its principal place of

business in China.  (*Id.* at ¶¶ 57–58.)  According to plaintiffs, Midea China manufactured several of the Microwaves and supplied them to Electrolux.[4]  (*Id.* at ¶¶ 42–43.)  In March 2010, prior to shipping the Microwaves to the United States, Midea China performed product testing on the Microwaves, which recorded that the Microwaves' handle surface temperatures reached 137.48 degrees Fahrenheit—well in excess of the ASTM Standard C1055-03—when "using a mere thirty percent of a burner's power from the cooktop below."  (*Id.* at ¶ 43.)  Midea China submitted these findings to Underwriter Laboratories, LLC ("UL") as part of the process to certify the Microwaves for sale in the United States.  (*Id.* at ¶ 48.)  Plaintiffs aver that defendant Midea China had "actual and/or constructive knowledge" of the handle testing as a result of this product testing, which was performed prior to the sale of the Microwaves in the United States.  (*Id.* at ¶¶ 62–64.)  Midea China allegedly manufactured the Hunt Microwave.  (*Id.* at ¶ 61.)

Defendant Midea America Corp. ("Midea America") is a Florida corporation with its principal place of business in New Jersey.  (*Id.* at ¶ 55.)  Midea America is the North American headquarters of Midea, a manufacturer that "markets and distributes" various home appliances.  (*Id.*)  In April 2017, Midea America opened a research and development facility in Louisville, Kentucky that, *inter alia*, tests certain Midea equipment sold in the United States.  (*Id.*)  Plaintiffs allege that, due to communications between Electrolux, Midea China, and Midea America, Midea America had knowledge of the handle defect at least as of January 2016.  (*Id.* at ¶ 56.)  However, plaintiffs do not allege whether Midea America itself conducted any tests of the Microwaves at issue in this action.

Defendant Sharp Appliances Thailand Limited ("SATL") is a Thailand-based manufacturer and supplier of microwaves that contracted with Electrolux to manufacture some of the Microwaves for distribution in the United States.  (*Id.* at ¶ 74–75.)  Plaintiffs allege that defendant SATL had "actual and/or constructive knowledge of" the handle defect as of at least

---

[4]  Plaintiffs allege in their FAC that the Microwaves are comprised of certain models manufactured by defendant Midea China (FGMV154CLF, FGMV175QF, FFMV163PW, FFMV162LW, FFMV164LS, LFMV164QF, FFMV152CLW, and FFMV154CLS) and certain models manufactured by defendant Sharp Appliances Thailand Limited (FGBM187KB, FGBM187KW, FGMV174KF, FGMV174KM, FGMB185KF, FGBM205KF, FGMV185KF, FGMV205KF, and FPMV189KF).  (Doc. No. 194 at ¶ 42.)

May 2011 due to product testing.  (*Id.* at ¶ 140.)  Defendant SATL also allegedly manufactured the Mendoza Microwave.  (*Id.* at ¶¶ 80.)

Defendant Sharp Manufacturing Company of America ("SMCA") is a division of Sharp Electronics Corporation with its principal place of business in Tennessee.  (*Id.* at ¶ 70.)  Sharp Electronics Corporation is a New York corporation with its principal place of business in New Jersey.  (*Id.*)  According to plaintiffs, defendant SMCA performs product testing on certain microwaves that are sold in the United States, including Microwaves manufactured by defendant SATL.  (*Id.* at ¶ 70.)  Plaintiffs assert that defendant SMCA has "had actual and/or constructive knowledge" of the handle defect since at least May 2011 due to its own laboratory testing.  (*Id.* at ¶ 72.)

Defendant Lowe's is a North Carolina corporation with its principal place of business in North Carolina, and defendant Modesto is a California corporation with its principal place of business in California.  (*Id.* at ¶ 82–84.)  As retailers, defendants Lowe's and Modesto allegedly sold the Microwaves to plaintiffs and restated the representation that the Microwaves were suitable for OTR use.  (*Id.* at ¶¶ 121–123.)

Plaintiffs further allege that defendants

> continue to sell the Microwaves omitting disclosure of the Handle Defect; have not modified the Microwaves or the Stainless Steel Handles to eliminate the Handle Defect; have not provided any warning of the Handle Defect; have not offered to replace all of the defective Microwaves or Stainless Steel Handles; have not replaced or repaired the workmanship, parts, and/or material that cause the Handle Defect; and have not refunded all or part of the monies paid by [consumers] for their Microwaves and/or Stainless Steel Handles, including the cost to install the Microwaves.

(*Id.* at ¶ 155.)

## PROCEDURAL BACKGROUND

On May 19, 2017, plaintiffs Erika Mendoza and James Hunt filed a complaint initiating this putative class action lawsuit against defendant Electrolux in the Stanislaus County Superior Court, alleging violations of California's Consumer Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), and the Song-Beverly Consumer Warranty Act ("Song-Beverly Act").  (Doc. No. 1-1 at 2–3, 17–22.)  On June 22, 2017, defendant Electrolux removed

1    this action to this federal court pursuant to 28 U.S.C. § 1332(d), on the grounds that diversity

2    jurisdiction exists under the Class Action Fairness Act because the putative class contained at

3    least 100 class members, minimal diversity of citizenship was met, and the amount in controversy

4    exceeded $5,000,000.  (Doc. No. 1 at 2.)  The next day, on June 23, 2017, defendant Electrolux

5    filed a motion to transfer this action to the Middle District of Pennsylvania, which this court

6    granted on November 2, 2017.  (Doc. Nos. 4, 50.)  While the case was pending before the Middle

7    District of Pennsylvania, the case was consolidated with related actions pending in that district,

8    *Rice v. Electrolux Home Products, Inc.*, No. 4:15-cv-00371-MWB, and *Mauro v. Electrolux*

9    *Home Products, Inc.*, Case No. 4:18-cv-00539-MWB.  (Doc. No. 153 at 2.)  Approximately one

10   year after this case's transfer, on October 3, 2018, plaintiffs—along with the plaintiffs in the

11   consolidated action—filed an amended consolidated class action complaint against defendants

12   Electrolux; Lowe's; SMCA; SATL; Midea America; Midea China; and Modesto, (collectively,

13   "defendants").  *Rice*, No. 4:15-cv-00371-MWB, Doc. No. 173 at 1.

14         On January 15, 2020, the U.S. District Court for the Middle District of Pennsylvania

15   granted motions to dismiss brought by defendants SMCA, SATL, Midea China, and Midea

16   America and granted in part a motion to dismiss brought by defendants Electrolux, Lowe's and

17   Modesto.  *Rice*, No. 4:15-cv-00371-MWB, Doc. Nos. 247, 248.  Plaintiffs promptly moved for

18   reconsideration of that court's order on January 29, 2020, *Rice*, No. 4:15-cv-00371-MWB, Doc.

19   No. 250, which was granted, in part, on August 13, 2020.  (Doc. No. 155 at 1–2.)  Specifically,

20   the district court in *Rice* reinstated some of plaintiff's causes of action that it had initially

21   dismissed with prejudice, reinstated and dismissed without prejudice some causes of action that it

22   had initially dismissed with prejudice, and transferred plaintiffs' action back to the Eastern

23   District of California.  (Doc. No. 155 at 1–2.)

24         Two months after being transferred back to the Eastern District of California, on

25   November 13, 2020, plaintiffs filed the operative first amended complaint ("FAC") in this court

26   against defendants on behalf of a putative class of similarly situated consumers, once again

27   alleging violations of the CLRA, the UCL, and the Song-Beverly Act.  (Doc. No. 194.)  On

28   November 30, 2020, defendants SAMC, SATL, Midea China, and Midea America each filed

1   separate motions to dismiss, and defendants Electrolux, Lowe's and Modesto filed a joint motion

2   to dismiss.[5]  (Doc. Nos. 196, 198, 199, 201, 202.)  On January 5, 2021, plaintiffs filed a

3   consolidated opposition to defendants SAMC's and SATL's motions to dismiss, a consolidated

4   opposition to defendants Midea China's and Midea America's motions to dismiss, and an

5   opposition to defendants Electrolux's, Lowe's, and Modesto's motion to dismiss.  (Doc. Nos.

6   211–13.)  On January 26, 2021, defendants SAMC, SATL, Midea China, and Midea America

7   each filed separate replies to plaintiffs' applicable oppositions to their motions to dismiss, and

8   defendants Electrolux, Lowe's, and Modesto filed a joint reply.[6]  (Doc. Nos. 217, 218, 220, 221,

9   222).

10                                              **ANALYSIS**

11          In the two pending motions to dismiss before the court addressed by this order, defendants

12   SMCA and SATL contend that:  (1) plaintiffs lack standing with respect to their ability to seek

13   injunctive relief and to assert claims on behalf of the putative class members regarding products

14   that plaintiffs did not themselves purchase; (2) this court lacks personal jurisdiction over the

15   claims brought against defendants SMCA and SATL; and (3) plaintiffs fail to state any

16   cognizable claims against defendants SMCA and SATL upon which relief can be granted.[7]  (Doc.

17   Nos. 196-1 at 2–3; 206 at 9.)

18   /////

19   /////

20   _____

21   [5]  On December 2, 2020, defendants Midea China and Midea America submitted corrected
     memoranda of points and authorities in support of their respective motions to dismiss.  (Doc. No.
22   208).  According to defendants Midea China and Midea America, the memoranda were
     "corrected to fix formatting errors only," and "[n]o substantive changes" were made.  (*Id.* at 2.)

23
24   [6]  On January 27, 2021, defendant Midea China filed a request for a two-page extension to the
     page limit applicable to its reply brief due to a last-minute clerical formatting change that altered
25   the length of the document.  (Doc. No. 225 at 2.)  Good cause appearing, defendant Midea
     China's request is granted.

26
27   [7]  The court notes that in the remaining three motions to dismiss, defendants Midea China and
     Midea America also argue that this court lacks personal jurisdiction over the claims asserted
28   against them, and all remaining defendants contend that plaintiffs failed to state cognizable claims
     against them upon which relief can be granted.  (*See* 199-1 at 2; 201-1 at 2; 202 at 3; 206 at 2–3.)

1  **A.      Standing Pursuant to Rule 12(b)(1)**

2          1.      Legal Standard

3          "Federal courts are courts of limited jurisdiction and are presumptively without

4  jurisdiction over civil actions."  *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav.*

5  *Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins.*

6  *Co.*, 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021).  Federal courts "possess only

7  that power authorized by Constitution and statute, which is not to be expanded by judicial

8  decree."  *Kokkonen*, 511 U.S. at 377 (internal citations omitted).  Subject matter jurisdiction is

9  required; it cannot be forfeited or waived.  *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at

10  1156.  Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the

11  court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

12          Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may

13  "challenge a federal court's jurisdiction over the subject matter of the complaint."  *Nat'l Photo*

14  *Grp., LLC v. Allvoices, Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24,

15  2014).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the

16  challenger asserts that the allegations contained in a complaint are insufficient on their face to

17  invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)

18  (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  A party making a facial attack does

19  not submit supporting evidence with the motion because jurisdiction is challenged based solely on

20  the pleadings.  *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156; *see also Diva*

21  *Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1084 (N.D. Cal. 2019) ("[C]ourts do

22  not consider evidence outside the pleadings when deciding a facial attack.") (citation omitted).

23  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):

24  [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the

25  plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to

26  invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  The

27  court need not assume the truth of legal conclusions cast in the form of factual allegations.

28  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.  In ruling on a party's factual attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039.  The movant may "rely on affidavits or any other evidence properly before the court," and the party opposing the motion must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).

Here, because defendants SMCA and SATL argue that the allegations in plaintiffs' FAC are insufficient for the invocation of federal jurisdiction, defendants SMCA and SATL bring a facial attack under Rule 12(b)(1).  (*See* Doc. Nos. 196 at 24–26; 206 at 23–26.)

### 2.   Standing to Bring Claims Regarding Products Plaintiffs did not Purchase

"[T]hose who seek to invoke the jurisdiction of the federal court must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and Article III federal courts lack subject matter jurisdiction over such suits.") (*quoting Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)).  An actual case or controversy will be held to exist when a plaintiff establishes standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*) (citing *Lujan*, 504 U.S. at 560–61; *see also Buono v. Norton*, 371 F.3d 543, 546 (9th Cir. 2004).  These factors apply in the class action context.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) ("That a suit may be a class action . . . adds nothing to the question of standing . . . .") (quoting *Simon v. Eastern Ky. Welfare*

9

1    *Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).  Each form of relief sought requires a separate

2    showing of standing.  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,

3    528 U.S. 167, 185 (2000); *Bates*, 511 F.3d at 985; *see also Haro v. Sebelius*, 747 F.3d 1099, 1108

4    (9th Cir. 2013).

5         "In a class action, standing is satisfied if at least one named plaintiff meets the

6    requirements."[8]  *Bates*, 511 F.3d at 985.  "[O]nce the named plaintiff demonstrates her individual

7    standing to bring a claim, the standing inquiry is concluded and the court proceeds to consider

8    whether the Rule 23(a) prerequisites for class certification have been met."  *B.K. by next friend*

9    *Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019) (citing *Melendres v. Arpaio*, 784 F.3d 1254,

10   1262 (9th Cir. 2015)).  "[A]ny issues regarding the relationship between the class representative

11   and the passive class members—such as dissimilarity in injuries suffered—are relevant only to

12   class certification, not to standing."  *Melendres*, 784 F.3d at 1262 (citing Newberg on Class

13   Actions § 2:6 (5th ed. 2011)).  Thus, "when we measure a plaintiff's standing, regardless of

14   whether the plaintiff sues individually or as a class representative, we look concretely at the facts

15   that pertain to that plaintiff."  *B.K. by next friend Tinsley*, 922 F.3d at 967.  The standing inquiry

16   then becomes whether "[a]t least one *named* plaintiff" satisfies the requirements listed above,

17   namely, to demonstrate an injury in fact that is fairly traceable and likely to be redressed by a

18   favorable decision.  *See Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993) (emphasis in original);

19   *Bates*, 511 F.3d at 985.

20        Here, the parties do not dispute that one of the named plaintiffs, plaintiff Mendoza, has

21   standing to assert claims against defendants SMCA and SATL related to their manufacturing

22   and/or testing of the Mendoza Microwave.  (*See* Doc. Nos. 196-1 at 23 (defendant SMCA

23   conceding that it performed testing on the Mendoza Microwave); 206 at 23 (defendant SATL

24   conceding that it manufactured the Mendoza Microwave).)  Instead, defendants SMCA and

25   _____

26   [8]  In *TransUnion LLC v. Ramirez*, the Supreme Court clarified that "[e]very class member must
     have Article III standing in order to recover individual damages." — U.S. —, 141 S. Ct. 2190,
27   2208 (2021).  However, the Supreme Court has expressly held open "the distinct question
     whether every class member must demonstrate standing *before* a court certifies a class."  *Id.* at
28   2208 n.4 (emphasis in original); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee*
     *Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022).

1    SATL merely contend that the *only* Microwave they tested or manufactured was the Mendoza

2    Microwave.  (Doc. Nos. 196-1 at 23; 206 at 23.)  Thus, defendants SMCA and SATL argue that

3    plaintiff Hunt, as well as "purchasers of any [non-Mendoza] Microwave . . . have no standing to

4    bring a claim against [them] because those Plaintiffs did not purchase a microwave that" SMCA

5    or SATL manufactured or tested.  (Doc. Nos. 196-1 at 23; 206 at 23.)  This argument, however, is

6    made irrelevant by defendants SMCA's and SATL's concessions that they tested and/or

7    manufactured the Mendoza Microwave, and accordingly, that at least one named plaintiff has

8    standing to bring claims against them in this action.  *See Bates*, 511 F.3d at 985.  Moreover, the

9    parties do not dispute that at least one of the named plaintiffs has standing to bring claims against

10   the other five defendants named in this action.  Accordingly, the court is satisfied that at least one

11   named plaintiff in this case "has 'alleged such a personal stake in the outcome of the controversy

12   as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's

13   remedial powers on [their] behalf."  *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975); *see Ellis v.*

14   *Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011) ("Because only one named Plaintiff

15   must meet the standing requirements, the district court did not err in finding that Plaintiffs have

16   standing."); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011) ("[O]ur law keys

17   on the representative party . . . . we made that even more explicit when we held that . . . 'we

18   consider only whether at least one named plaintiff satisfies the standing requirements.' . . .

19   Appellees do not assert that no named plaintiff has standing.") (quoting *Bates*, 511 F.3d at 985),

20   *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); *West Virginia v.*

21   *Env't Prot. Agency*, — U.S. —, 142 S. Ct. 2587, 2606 (2022) (proceeding to decide the merits of

22   a case where "it is apparent that at least one group of petitioners" have standing).

23          To the extent that defendants argue that "Plaintiffs lack standing to represent classes of

24   individuals who purchased the other Microwaves" or that "[p]laintiffs' class is fatally overbroad,"

25   these arguments are unavailing.  (Doc. Nos. 217 at 14; 218 at 14; 196-1 at 24.)  "Defendant[s']

26   'standing' objection merely raises an issue to be considered, if at all, in connection with a motion

27   /////

28   /////

1    for class certification."[9]  *Pizana v. SanMedica Int'l LLC*, — F.R.D. —, No. 1:18-cv-00644-DAD-

2    SKO, 2022 WL 1241098, at *13 (E.D. Cal. Apr. 27, 2022); *see also Cardenas v. NBTY, Inc.*, 870

3    F. Supp. 2d 984, 992 (E.D. Cal. 2012) (finding that the named plaintiff's ability to represent

4    purchasers of a related line of dietary supplements not purchased by the named plaintiff to be

5    analyzed under Rule 23); *Ellis*, 657 F.3d 979 (finding that the named plaintiff's ability to

6    represent employees who were denied promotions to positions different from her own to be

7    analyzed under the typicality prong of Rule 23).

8            1.      Standing to Bring Claims for Injunctive Relief

9        "Standing must be shown with respect to each form of relief sought, whether it be

10   injunctive relief, damages or civil penalties." *Bates*, 511 F.3d at 985.  "[T]o establish standing to

11   pursue injunctive relief . . . [plaintiffs] must demonstrate a real and immediate threat of repeated

12   injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011)

13   _____

14   [9] Even assuming defendants SMCA's and SATL's argument in this regard were to be appropriate
     for decision at this time, "[t]he majority of the courts that have carefully analyzed the question

15   hold that a plaintiff may have standing to assert claims for unnamed class members based on
     products he or she did not purchase so long as the products and alleged misrepresentations are

16   substantially similar." *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 3d 881, 890 (N.D. Cal.
     2012).  Defendants SMCA and SATL assert that plaintiffs would fail under this test because

17   plaintiffs do not allege that the non-Mendoza Microwaves (which were not manufactured or
     tested by SMCA and SATL) and the Mendoza Microwaves (which were manufactured or tested

18   by SMCA and SATL) were subject to substantially similar misrepresentations underpinning the
     plaintiffs' legal claims.  (Doc. Nos. 196-1 at 24; 206 at 24.)  However, plaintiffs have alleged that

19   "[t]he Microwaves are all within the specific microwave product category identified as 'Over-the-
     Range' microwaves that are designed for a specific purpose and specifically manufactured for a

20   unique product purpose . . . . the Microwaves are designed, manufactured and purchased based on
     their unique market position to be sold for installation 'over-the-range,'" and that defendants

21   "represented that the Microwaves . . . could be safely used over the stove[] when in fact they
     could not be."  (Doc. Nos. 213 at 8; 194 at ¶ 195.)  According to plaintiffs, the "OTR

22   representation resides on every document sold with the Microwave, the exterior packaging and
     labels, and the sales documents with the consumer memorializing the sale of the Microwave."

23   (*Id.* at 9.)  Contrary to defendants SMCA's and SATL's arguments in this regard, the alleged
     "misrepresentations across the product lines" in this case—i.e., that the Microwaves were safe for

24   OTR use—"are identical . . . and those common misrepresentations are the crux of Plaintiffs'
     case," such that the products and misrepresentations alleged in this action are substantially

25   similar.  *Brown*, 913 F. Supp. 2d at 892.  Thus, even assuming *arguendo* that it would be proper
     for the court to analyze the issue of plaintiffs' standing to assert claims on behalf of class

26   members who purchased other Microwaves at this time, plaintiffs have adequately pled that
     standing exists in this case.

27

28

1   (internal quotation omitted).  "Past exposure to illegal conduct does not in itself show a present

2   case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present

3   adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).  "Finally, a named plaintiff

4   must show that she herself is subject to a likelihood of future injury," rather than merely showing

5   "that a defendant's conduct will subject unnamed class members to the alleged harm."  *Phillips v.*

6   *Apple Inc.*, No. 5:15-cv-04879-LHK, 2016 WL 5846992, at *6 (N.D. Cal. Oct. 6, 2016) (citing

7   *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044–45 (9th Cir. 1999)).

8          In their motions to dismiss, defendants SMCA and SATL argue that plaintiffs lack

9   standing to pursue injunctive relief under the CLRA and UCL because they "have not alleged that

10  economic injury is imminent or will reoccur."  (Doc. Nos. 196-1 at 25; 206 at 25.)  More

11  specifically, defendant SATL asserts that plaintiffs do not allege that they have any intention of

12  repurchasing the Microwaves, and indeed, plaintiffs allege that they would not have purchased

13  the Microwaves if they had known about the handle defect.  (Doc. No. 196-1 at 26; *see also* Doc.

14  No. 194 at ¶ 162.)  Plaintiffs counter that these arguments overlook Ninth Circuit caselaw

15  addressing imminent future harm in the product liability context, pointing to the possibility that

16  they could be injured through repurchasing the allegedly defective Microwaves upon "reasonably,

17  but incorrectly, assum[ing] the product was improved."  (Doc. No. 213 at 25) (citing *Davidson v.*

18  *Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018)).  Consequently, plaintiffs assert that

19  they have standing to pursue injunctive relief under the CLRA and UCL.  (*Id.*)

20         It is true, as plaintiffs point out, the Ninth Circuit has held that "a previously deceived

21  consumer may have standing to seek an injunction against false advertising or labeling, even

22  though the consumer now knows or suspects that the advertising was false at the time of the

23  original purchase[.]"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).

24  Nonetheless, one's standing to do so depends on whether "the consumer may suffer an 'actual

25  and imminent, not conjectural or hypothetical' threat of future harm."  *Id.*  In *Davidson*, the

26  plaintiff sued a manufacturer of personal cleansing wipes, alleging that the manufacturer falsely

27  advertised the wipes as "flushable" in violation of the UCL, FAL, and CLRA when they were not,

28  in fact, flushable.  *Id.* at 961.  Critical to the court's holding that plaintiff had standing to seek

1    injunctive relief in that case were allegations in the complaint that plaintiff

2          continues to desire to purchase wipes that are suitable for disposal in
           a household toilet"; "would purchase truly flushable wipes
3          manufactured by [Kimberly–Clark] if it were possible"; "regularly
           visits stores . . . where [Kimberly–Clark's] 'flushable' wipes are
4          sold"; and is continually presented with Kimberly–Clark's flushable
           wipes packaging but has "no way of determining whether the
5          representation 'flushable' is in fact true.

6    *Id.* at 970–71.  Here, plaintiffs do not assert any comparable allegations in their FAC that they

7    have any desire to repurchase the Microwaves or will in fact do so.  Because plaintiff "does not

8    allege the threat of future harm that the Ninth Circuit in *Davidson* held is required for Article III

9    standing in a case seeking public injunctive relief," *Stover v. Experian Holdings, Inc.*, 978 F.3d

10   1082, 1087 (9th Cir. 2020), plaintiffs' argument that they have standing to pursue injunctive relief

11   in this case necessarily fails.  *Compare Tryan v. Ulthera, Inc.*, No. 2:17-cv-02036-MCE-CMK,

12   2018 WL 3955980, at *10 (E.D. Cal. Aug. 17, 2018) (finding that "standing to seek injunctive

13   relief is absent" where plaintiffs did not plausibly allege that they "would undergo [the cosmetic

14   procedure underlying the allegations in the operative complaint] again under any circumstances"),

15   *with Peacock v. Pabst Brewing Co., LLC*, 491 F. Supp. 3d 713, 723 (E.D. Cal. 2020) (finding that

16   plaintiff adequately alleges a threat of future harm where he alleges that he wishes and is likely to

17   continue purchasing defendant's product if he could confidently rely on defendant's advertising

18   information).

19        Alternatively, plaintiffs also advance the unpersuasive argument that they have standing to

20   bring claims for injunctive relief because they continue to be at the real and "significant risk of

21   burn injury imposed by the defective handles."  (Doc. No. 213 at 26.)  However, as defendants

22   point out, this argument is plainly incompatible with the injury plaintiffs have pled in this case.

23   (*See* Doc. Nos. 217 at 14; 218 at 15.)  In plaintiffs' own words, the injury alleged in this case is an

24   "economic harm recoverable under the benefit of the bargain [theory]."  (Doc. No. 213 at 24.)

25   Plaintiffs distinguish "cases where the defect causes the injury" with "the current matter, where

26   the defect itself is the injury."  (*Id.*)  For that reason, plaintiffs assert that "the purchase of any of

27   these Microwaves with the Handle Defect inflicted the damage," regardless of any physical

28   injury, because the injury in this case is economic.  (*Id.*; *see also* Doc. No. 194 at ¶ 229)

1  ("Plaintiffs Mendoza and Hunt and putative class members have an unsafe Microwave and have

2  received goods whose condition substantially impairs their value . . . . [they] have been damaged

3  by the diminished value of their Microwaves.")  Indeed, plaintiffs Mendoza and Hunt do not

4  allege that they themselves were even physically injured by the high temperatures reached by the

5  Microwave handles.  Plaintiffs may not allege an entirely new type of injury for the first time in

6  their opposition to defendants' motions to dismiss.  *See Provencio v. Vazquez*, 258 F.R.D. 626,

7  639 (E.D. Cal. 2009) ("Raising a completely new theory of liability . . . in a brief in opposition to

8  a motion to dismiss does not grant Defendant fair notice of Plaintiffs' claim or the grounds upon

9  which it rests.  If Plaintiffs wish to further pursue this first new theory of liability they must

10  request leave to file a fourth amended complaint.").

11      For the reasons explained above, the court finds that plaintiffs lack standing to seek

12  injunctive relief in this case.

13  **B.      Personal Jurisdiction Pursuant to Rule 12(b)(2)**

14      Defendants SMCA and SATL next argue that the claims asserted against them in

15  plaintiffs' FAC must be dismissed because the court lacks personal jurisdiction over them.  (Doc.

16  Nos. 196-1 at 27; 206 at 9.)

17          1.      Legal Standard

18      Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to

19  dismiss an action for lack of personal jurisdiction.  In opposing such a motion, the plaintiff bears

20  the burden of proof to show that jurisdiction is appropriate.  *Picot v. Weston*, 780 F.3d 1206, 1211

21  (9th Cir. 2015); *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010).  When a

22  defendant's motion to dismiss is based on written materials rather than an evidentiary hearing and

23  is to be decided on the pleadings, affidavits, and discovery materials, the plaintiff need only make

24  a *prima facie* showing that personal jurisdiction exists in order for the action to proceed.  *See*

25  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); *Picot*, 870 F.3d at 1211.

26      In determining whether a plaintiff has established personal jurisdiction, the court accepts

27  the plaintiff's allegations as true and resolves any conflicts between the parties over statements

28  contained in affidavits in the plaintiff's favor.  *Love*, 611 F.3d at 608; *Schwarzenegger v. Fred*

1    *Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  However, where allegations are

2    controverted by a defendant, the plaintiff cannot "simply rest on the bare allegations of [the]

3    complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise,

4    supporting personal jurisdiction." *Philips v. Pitt Cnty. Mem'l Hosp., Inc.*, 855 F. App'x 324 (9th

5    Cir. 2021)[10] (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.

6    1977)).

7         "Where, as here, there is no applicable federal statute governing personal jurisdiction, the

8    law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Indus. AB*, 11

9    F.3d 1482, 1484 (9th Cir. 1993).  "California's long-arm statute allows courts to exercise personal

10   jurisdiction over defendants to the extent permitted by the Due Process Clause of the United

11   States Constitution." *Core-Vent Corp.*, 11 F.3d at 1484; *see also* Cal. Civ. Proc. Code § 410.10

12   ("A court of this state may exercise jurisdiction on any basis not inconsistent with the

13   Constitution of this state or of the United States.").  Thus, only constitutional principles constrain

14   the jurisdiction of a federal court in California.  *Love*, 611 F.3d at 608–09.

15        Under the Fourteenth Amendment's Due Process Clause, courts may exercise personal

16   jurisdiction over non-resident defendants only so long as there are sufficient "minimum contacts"

17   between the defendant and the forum state "such that the maintenance of the suit does not offend

18   'traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen Corp. v.

19   Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

20   (1945)).  "Each defendant's contacts with the forum State must be assessed individually." *Calder

21   v. Jones*, 465 U.S. 783, 790 (1984).[11]  "The strength of contacts required depends on which of the

22   two categories of personal jurisdiction a litigant invokes:  specific jurisdiction or general

23

24   ───────────────

     [10]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule

25   36-3(b).

26   [11]  A plaintiff must also establish personal jurisdiction for "each claim asserted against a
     defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir.

27   2004).  If personal jurisdiction exists over one claim, but not others, the district court may
     exercise pendent personal jurisdiction over any remaining claims that arise out of the same

28   "common nucleus of operative facts" as the claim for which jurisdiction exists. *Id.*

1   jurisdiction." *Ranza*, 793 F.3d at 1068.  Here, plaintiffs seek to invoke both specific and general

2   jurisdiction as to defendants SMCA and SATL.

3         2.    <u>Writ of Mandamus in the Third Circuit</u>

4         As a threshold matter, the court briefly addresses the procedural history relevant to the

5   personal jurisdiction inquiry in this action.  In September 2020, defendants SMCA, SATL, Midea

6   China, and Midea America filed petitions for writ of mandamus in the U.S. Court of Appeals for

7   the Third Circuit challenging the order of the U.S. District Court for the Middle District of

8   Pennsylvania transferring this case to the Eastern District of California.  *See In re Sharp Mfg. Co.*

9   *Am.*, No. 20-3039, Doc. Nos. 1, 18; *In re Sharp Appliances Thailand Ltd.*, No. 20-2807 (3d. Cir.),

10  Doc. Nos. 1, 30; *In re Midea Microwave & Electrical Appliances Mfg. Co. Ltd*., No. 20-2806 (3d.

11  Cir.), Doc. Nos. 1, 36; *In re Midea America Corp.*, No. 20-2914 (3d. Cir.), Doc. Nos. 1, 25.  The

12  Third Circuit denied the petitions, holding that "any error committed by the District Court was

13  not so clear as to warrant the extraordinary remedy of mandamus."  *In re Sharp Mfg. Co. Am.*,

14  No. 20-3039 (3d. Cir.), Doc. No. 18 at 2.  On the issue of personal jurisdiction, the Third Circuit

15  stated:

16
17
18
19
20
21
22
        We note that, in transferring the case, the District Court [for the Middle District of Pennsylvania] concluded that the plaintiffs made a "*prima facie* showing" that the transferee court [in the Eastern District of California] has personal jurisdiction over the petitioning defendants.  In its transfer order, however, the District Court emphasized that it held plaintiffs only to a "light" burden on that issue and expressly provided that defendants could "further challenge the jurisdictional issue in the Eastern District of California."  Thus, we do not read the District Court's order as deciding the issue of personal jurisdiction in a way that constitutes law of the case in the transferee court under *Christianson v. Colt Industries Operating Co.*, 486 U.S. 800, 816–17 (1988).

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

1    *Id.*  Accordingly, the court finds that it is appropriate to proceed to address the question of

2    whether personal jurisdiction exists as to defendants SMCA and SATL.[12]

3           3.    <u>Personal Jurisdiction as to Defendant SMCA</u>

4        In seeking to make their necessary *prima facia* showing of personal jurisdiction in the

5    FAC, plaintiffs assert that both general and specific personal jurisdiction exist in California as to

6    defendant SMCA.  (Doc. No. 213 at 28.)

7         a.    *General Jurisdiction*

8        Plaintiffs argue that the court has general jurisdiction over defendant SMCA because:  (1)

9    defendant SMCA was incorporated in California on November 13, 1997 and has continuous and

10    systematic business contacts in the state; and (2) a second corporate entity, of which defendant

11    SMCA is a division, became subject to personal jurisdiction in California when it merged with a

12    third entity that was in fact incorporated in California.  (*See* Doc. No. 213 at 27–29.)

13              i.    Whether General Jurisdiction Exists due to Continuous and

14                           Systematic Business Contacts

15        General jurisdiction exists when a defendant engages in "continuous and systematic

16    general business contacts" with the forum state.  *Helicopteros Nacionales de Colombia, S.A. v.*

17

18    [12]  In their motions to dismiss, defendants SMCA and SATL each acknowledge that their
petitions for writ of mandamus were pending before the Third Circuit at the time of filing their
19    motion to dismiss and that, depending on the Third Circuit's resolution of their petitions, they
may be bound by the Middle District of Pennsylvania's preliminary determination that this court
20    appears to have personal jurisdiction over defendants.  (Doc. Nos. 196-1 at 26; 206 at 27.)
Nonetheless, SMCA and SATL "raise[d] a jurisdictional defense" in their motions to dismiss "in
21    order to preserve" their arguments that this court lacks personal jurisdiction.  (Doc. Nos. 196-1 at
27; 206 at 27) (citing *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).  Defendants SMCA and
22    SATL "request[ed] leave to submit supplemental papers on the jurisdictional point" if this court,
or the Third Circuit, holds that this court is not bound by the jurisdictional finding of the Middle
23    District of Pennsylvania.  (Doc. Nos. 196-1 at 27; 206 at 28.)  The Third Circuit issued its order
denying the petitions for writ of mandamus before defendants SMCA and SATL filed their
24    replies in support of their motions to dismiss in this action.  *See In re Sharp Mfg. Co. Am.*, No.
20-3039, Doc. No. 18.  In their replies, defendants SMCA and SATL each devoted multiple pages
25    of their briefings to their arguments that this court may not exercise personal jurisdiction over
them, and neither party reiterated their request for leave to submit supplemental papers on the
26    personal jurisdiction issue.  (*See* Doc. Nos. 217 at 15–19; 218 at 16–21.)  Accordingly, the court
considers this request abandoned and proceeds to address the substance of the parties' arguments
27    in connection with the issue of personal jurisdiction.

28

1    *Hall*, 466 U.S. 408, 416 (1984); *see also Goodyear Dunlop Tires Operations, S.A., v. Brown*, 564

2    U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or

3    foreign-country) corporations to hear any and all claims against them when their affiliations with

4    the State are so 'continuous and systematic' as to render them essentially at home in the forum

5    State.") (quoting *Int'l Shoe*, 326 U.S. at 317).  "With respect to a corporation, the place of

6    incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"

7    *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (brackets in original) (citation omitted).  Thus,

8    "[a] corporation that operates in many places can scarcely be deemed at home in all of them."

9    *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 965 (N.D. Cal. 2015) (quoting *Daimler AG*,

10   571 U.S. at 139 n.20).

11          Although plaintiffs allege in their FAC that defendant SMCA is subject to general

12   personal jurisdiction in California because it was organized under the laws of California on

13   November 13, 1997, (Doc. No. 194 at ¶ 89), defendant SMCA contends in its pending motion

14   that a different company, Sharp Electronics Manufacturing Company of America, Inc.

15   ("SEMA"), was actually the entity incorporated on November 13, 1997 in California.  (Doc. No.

16   196-1 at 27.)  As defendant SMCA recounts, SEMA later merged into Sharp Electronics

17   Corporation ("SEC").  (*Id.*)  Despite these discrepancies, the parties do not dispute that defendant

18   SMCA—which is a division of SEC—has its principal place of business in Tennessee, while SEC

19   is incorporated in New York and has its principal place of business in New Jersey.  (*Id.*)  Indeed,

20   in plaintiffs' opposition to the pending motions, they appear to concede that SEMA (the corporate

21   entity incorporated in California in 1997) is a distinct entity from defendant SMCA, and thus, that

22   defendant SMCA was not incorporated in California.[13]  (*See* Doc. No. 213 at 27–28.)

23          Accordingly, as an initial matter, it is clear that California is not one of the "paradig[m] . .

24   . bases for general jurisdiction" over defendant SMCA because the parties agree that SEC is

25   incorporated in New York with its principal place of business in New Jersey, and that defendant

26

27   [13]  In its reply in support of its pending motion to dismiss, defendant SMCA further clarifies that
     SMCA is "not organized at all," let alone in California, because it is "a division of SEC, . . . not a
28   separate legal entity."  (Doc. No. 218 at 17.)

1    SMCA, a division of SEC, has its principal place of business in Tennessee.  *See Daimler*, 571

2    U.S. at 137; (Doc. Nos. 194 at ¶ 70; 218 at 17.)

3          Plaintiffs also argue that personal jurisdiction exists here because SEC controls defendant

4    SMCA and maintains multiple offices in California; defendant SATL ships the Microwaves to

5    SMCA through Los Angeles, California; defendant SMCA specifically anticipated sales in

6    California; and the plaintiffs' harm occurred in California.  (Doc. No. 213 at 28–29.)  However,

7    these conclusory allegations fail to sufficiently allege that defendant SMCA's "affiliations with

8    the State [were] so continuous and systematic as to render [SMCA] essentially at home" in

9    California.  *Goodyear*, 563 U.S. at 919 (internal quotation omitted); *see also Daimler*, 571 U.S. at

10   123, 139 (holding that general jurisdiction did not exist in California despite the fact that

11   defendant's subsidiary "ha[d] multiple California-based facilities," was the "largest supplier of

12   luxury vehicles to the California market," and had sales in California accounting for 2.4% of

13   defendant's worldwide sales); *Scanlon v. Curtis Int'l Ltd.*, 465 F. Supp. 3d 1054, 1062–63 (E.D.

14   Cal. 2020) (finding that a foreign corporation is not "at home" in California where, *inter alia*, no

15   evidence suggested that the foreign corporation had an office or any employees in California);

16   *Cahen*, 147 F.3d at 963–65 (concluding that the volume of business in California was "not

17   enough" to render defendant at home in California where defendant was not incorporated in or

18   had its principal place of business in California, but employed 0.4% of its U.S. employees in the

19   state, operated a research facility in the state, and produced vehicles accounting for 10.5% of the

20   new vehicle market in the state).

21         Thus, plaintiffs have failed to sufficiently allege that defendant SMCA has such

22   continuous and systematic business contacts with California to be subject to general jurisdiction

23   in the state.

24                    ii.    Whether General Jurisdiction Exists due to SEMA Merger

25         Having conceded that SEMA, not defendant SMCA, was incorporated in California,

26   plaintiffs next argue that personal jurisdiction nonetheless exists as to defendant SMCA in

27   California due to SEMA's subsequent merger into SEC.  (Doc. No. 213 at 27–28.)  More

28   specifically, plaintiffs contend that (1) SMCA "has no corporate structure distinct from" SEC, (2)

1  SEC "accepted the liabilities" of SEMA when SEMA merged into SEC in 2017, and (3) SEMA is

2  subject to general jurisdiction in California as a result of having been incorporated in the state.

3  (*See id*.)  As a result, plaintiffs aver that this court may exercise general jurisdiction over SEC,

4  and by extension, defendant SMCA.  (*Id.*)

5          "It is well established that, as a general rule, where a parent and subsidiary are separate

6  and distinct corporate entities, the presence of one . . . in a forum state may not be attributed to

7  the other."  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007).

8  However, some district courts have held that "[a] court will have personal jurisdiction over a

9  successor company if (1) the court would have had personal jurisdiction over the predecessor[;]

10  and (2) the successor company effectively assumed the subject liabilities of the predecessor."

11  *Lefkowtiz v. Scytl USA*, No. 3:15-cv-05005-JSC, 2016 WL 537952, at *3 (N.D. Cal. Feb. 11,

12  2016) (internal quotation marks omitted).  "[A] successor generally does not assume liability for

13  its predecessor's liabilities unless one of. . . four exceptions applies."  *Komaiko v. Baker*

14  *Technologies, Inc.*, No. 4:19-cv-03795-DMR, 2020 WL 1915884, at *11 (N.D. Cal. Apr. 20,

15  2020).  These four exceptions are:

16              (1) the successor expressly or impliedly agrees to assume the subject
                liabilities; (2) the transaction amounts to a consolidation or merger
17              of the successor and the predecessor (*de facto* merger); (3) the
                successor is a mere continuation of the predecessor; or (4) the
18              transfer of assets to the successor is for the fraudulent purpose of
                escaping liability for the predecessor's debts.
19

20  *Lefkowtiz*, 2016 WL 537952, at *4; *see also Winner Chevrolet, Inc. v. Universal Underwriters*

21  *Ins. Co.*, 2:08-cv-00539-LKK-JFM, 2008 WL 2693741, at *4 (E.D. Cal. July 1, 2008).

22          In order to fall under the first exception, "a plaintiff must plead the existence of a contract

23  and its terms which establish the obligation in issue."  *Komaiko*, 2020 WL 1915884, at *11

24  (internal quotation marks and brackets omitted); *see also Winner Chevrolet*, 2008 WL 2693741,

25  at *4 ("[P]laintiffs here must not only plead the existence of an assumption of liability but either

26  the terms of that assumption of liability (if express) or the factual circumstances giving rise to an

27  assumption of liability (if implied).")  Here, plaintiffs allege that SEMA "merged into [SEC] in

28  2017, [and] the two are now indistinguishable."  (Doc. No. 213 at 27.)  However, this conclusory

1    allegation alone is insufficient to demonstrate that SEC assumed SEMA's liabilities.  *See No Cost*

2    *Conference, Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1299 (S.D. Cal. 2013)

3    (finding that the plaintiff did not adequately plead assumption of liability where the plaintiff

4    merely made conclusory allegation that defendants "assumed all right[s] and responsibilities" of

5    the predecessor entity); *Komaiko*, 2020 WL 1915884, at *11 (finding that the "barebones

6    assertions" of assumption of liabilities insufficient where plaintiffs "do not cite to anything . . .

7    that references [successor's] assumption of [predecessor's] liabilities. . . . [or] plead factual

8    circumstances that give rise to an assumption of liability.").

9          Under the second exception, a plaintiff must plead that the transaction qualifies as a *de*

10   *facto* merger, which occurs "when 'one corporation takes all of another's assets without providing

11   any consideration that could be made available to meet claims of the other's creditors' or when

12   'the consideration consists wholly of shares of the purchaser's stock which are promptly

13   distributed to the seller's shareholders in conjunction with the seller's liquidation.'"  *Schwartz v.*

14   *Pillsbury, Inc.*, 969 F.2d 840, 846 (9th Cir. 1992) (quoting *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28

15   (1977)).  "Further, 'a *de facto* merger requires a showing that the purchaser paid inadequate

16   consideration for the seller's assets.'"  *Komaiko*, 2020 WL 1915884, at *11 (quoting *Sunnyside*

17   *Dev. Co., LLC v. Opsys Ltd.*, No. 3:05-cv-00553-MHP, 2007 WL 2462142, at *9 (N.D. Cal. Aug.

18   29, 2007)).  Here, plaintiffs do not plead any facts suggesting that SEC absorbed all of SEMA's

19   assets, that SEMA was liquidated, or that SEC paid inadequate consideration as part of the merger

20   with SEMA.  Thus, plaintiffs' allegation in their FAC are insufficient for this court to conclude

21   that the *de facto* merger exception applies in this action.

22         Third, under the "mere continuation" exception, a "a new entity assumes the liability of

23   the old entity when . . . . the purchasing corporation is a mere continuation of the seller."

24   *Hargrove & Costanzo v. United States*, No. 1:06-cv-00046-LJO-DLB, 2007 WL 2409590, at *4

25   (E.D. Cal. Aug. 21, 2007).  In their FAC, plaintiffs merely allege the legal conclusion that SEC

26   "accepted the liabilities of the predecessor as a merger that merely continued the operations of the

27   predecessor company," without any supporting factual allegations.  (Doc. No. 213 at 28.)

28   However, "a corporation acquiring the assets of another corporation is the latter's mere

continuation *only* upon a showing that '(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors,' or '(2) one or more persons were officers, directors, or stockholders of both corporations.'" *Sunnyside*, 2007 WL 2462142, at *9 (quoting *Ray*, 19 Cal. 3d at 29) (emphasis added). Plaintiffs have failed to allege facts supporting such a showing here. Thus, the court cannot conclude that the third exception is applicable in this action.

Finally, plaintiffs have not pled any facts suggesting that the fourth exception—which would apply if the transfer of assets from SEMA to SEC was for the "fraudulent purpose of escaping liability for [SEMA's] debts"—applies in this case. *Lefkowitz*, 2016 WL 537952, at *4.

Accordingly, plaintiffs have not plausibly alleged that general jurisdiction exists in California over SEC and by extension, defendant SMCA, by virtue of SEMA's merger into SEC.

> b.     *Specific Jurisdiction*

The parties also dispute whether specific jurisdiction exists in California as to defendant SMCA. (*See* Doc. Nos. 196-1 at 28; 213 at 28–29; 218 at 18.)

In determining whether a court has specific jurisdiction over a non-resident defendant, the following three-prong test is to be employed:

> (1) The non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which *arises out of* or *relates to* the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be *reasonable*.

*Picot*, 780 F.3d at 1211 (citing *Fred Martin Motor Co.*, 374 F.3d at 802) (emphasis added). Plaintiff has the burden of establishing the first two of these prongs, and a "strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (*en banc*). If plaintiff meets this burden, the burden then shifts to defendant on the third prong to show that the exercise of jurisdiction

/////

1  would not be reasonable.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th

2  Cir. 2011).

3  i.      Purposeful Direction of Activities[14]

4      "Where allegedly tortious conduct takes place outside the forum and has effects inside the

5  forum," courts in the Ninth Circuit examine purposeful direction by using the three-part "effects"

6  test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).  *AMA Multimedia,*

7  *LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020), *cert. denied*, No. 20-1430, ─── U.S. ───, 142

8  S. Ct. 76 (2021).  This "*Calder* effects test" asks whether the defendant is alleged to have (1)

9  committed an intentional act (2) that was expressly aimed at the forum state and (3) that caused

10  harm the defendant knew was likely to be suffered in the forum state.  *Fred Martin Motor Co.*,

11  374 F.3d at 803.

12      Under the first element, "[t]he meaning of the term 'intentional act' . . . is essentially the

13  same as in the context of intentional torts; namely, the defendant must act with the 'intent to

14  perform an actual, physical act in the real world.'"  *Picot*, 780 F.3d at 1214 (quoting *Fred Martin*

15  *Motor Co.*, 374 F.3d at 806).  Here, taking the facts alleged in the FAC in the light most favorable

16  to plaintiffs, the court finds that plaintiffs have sufficiently alleged that defendant SMCA

17  committed an intentional act by testing the Microwaves—which were eventually sold in

18  California—for compliance in its Memphis, Tennessee testing facility.  (Doc. No. 194 at ¶ 15.)

19  *See, e.g.*, *Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1246 (D. Haw. 2019) (alleged

20  deceptive labeling of a snack product sold in the forum state constitutes an intentional act);

21  /////

---

22  [14]  The analysis under this first prong of the three-step inquiry differs depending on whether the
23  action involves allegations of tortious conduct or contract obligations.  *See Ziegler v. Indian River*
   *Country*, 64 F.3d 470, 473 (9th Cir. 1995); *Sinatra*, 854 F.2d at 1195.  A "purposeful availment"
24  analysis is typically applied in suits sounding in contract, and a "purposeful direction" analysis is
   typically applied in suits sounding in tort.  *See Fred Martin Motor Co.*, 374 F.3d at 802.  Because
25  plaintiff's CLRA, UCL, and Song-Beverly claims asserted in this action sound in tort, the court
   will apply the purposeful direction analysis.  *See Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d
26  1231, 1241, 1245 (D. Haw. 2019) (applying the purposeful direction test where the plaintiff
   asserted CLRA and UCL claims); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No.
27  2:19-ml-02905-JAK-FFM, 2022 WL 522484, at *22–30 (C.D. Cal. Feb. 9, 2022) (applying the
   purposeful direction test where plaintiffs asserted violations of the Song-Beverly Act).
28

24

1   *Loomis v. Slendertone Dist., Inc.*, 420 F. Supp. 3d 1046, 1068 (S.D. Cal. 2019) (development,

2   advertising, and sale of a product constitutes intentional act).

3         Under the second element of the *Calder* effects test, whether allegations are sufficient to

4   satisfy the express aiming requirement depends on the specific type of tort or other wrongful

5   conduct at issue. *Fred Martin Motor Co.*, 374 F.3d at 805–07; *see also Wash. Shoe Co. v. A-Z*

6   *Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). The focus of the express aiming

7   requirement is on the "defendant's contacts with the forum state itself, not the defendant's

8   contacts with the persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The

9   express aiming requirement is not satisfied merely "by a defendant's knowledge that harm may

10   be inflicted on a plaintiff in a particular forum." *AMA Multimedia, LLC*, 970 F.3d at 1209, n.5.

11   (citing *Axiom*, 874 F.3d at 1068–70; *Walden*, 571 U.S. at 286).

12         In this case, the court concludes that plaintiffs have not carried their burden of sufficiently

13   alleging that defendant SMCA expressly aimed its intentional conduct at California. *See Picot*,

14   780 F.3d at 1211. Although the Microwaves tested by SMCA were ultimately sold in California,

15   "[t]he placement of a product into the stream of commerce, without more, is *not* an act

16   purposefully directed toward a forum state." (*See* Doc. No. 218 at 18) (citing *Holland Am. Line,*

17   *Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007)). Nor is it sufficient that the

18   economic harm alleged in the FAC occurred in California. *See Fred Martin Motor Co.*, 374 F.3d

19   at 807 (finding that while "[i]t may be true that [defendant's] intentional act eventually caused

20   harm to [plaintiff] in California . . . . this does not confer jurisdiction."); *Maeda*, 390 F. Supp. 3d

21   at 1246 (finding that defendant did not expressly aim its conduct at California, despite plaintiff

22   claiming to have suffered harm in California as a result of defendant's alleged deceptive labeling

23   and advertising of snack products sold in California and other states). Instead, additional conduct

24   beyond merely placing a product in the stream of commerce may include "designing the product

25   for the market in the forum State, advertising in the forum State, establishing channels for

26   providing regular advice to customers in the forum State, or marketing the product through a

27   distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112.

28   /////

1    Here, plaintiffs have not alleged that defendant SMCA engaged in any of these activities.

2    Although plaintiffs contend that "[t]he documents provided with the Microwaves included

3    warnings unique to . . . California," (Doc. No. 213 at 28), this warning consisted only of a safety

4    notice stating that "[t]he California Safe Drinking Water and Toxic Enforcement Act requires the

5    Governor of California to publish a list of substances known to the state to cause cancer, birth

6    defects, or other productive harm, and requires businesses to warn customers of potential

7    exposure to such substances." (*Id.* at 39.)  This one-sentence warning printed in the instruction

8    manual of the Microwaves hardly suggests that the Microwaves were "design[ed] . . . for the

9    market in the forum State," let alone that *defendant SMCA* designed or tested the Microwaves for

10   the market in California.  *See Asahi*, 480 U.S. at 112.  At most, the inclusion of this warning

11   demonstrates compliance with a state law and a possible awareness by defendant SMCA that the

12   product could end up being sold in California.  But that is insufficient to adequately allege

13   purposeful direction.  *See Holland Am. Line Inc.*, 485 F.3d at 459 (reiterating that "[t]he

14   placement of a product into the stream of commerce, without more, is not an act purposefully

15   directed toward a forum state" and that "[e]ven a defendant's awareness that the stream of

16   commerce may or will sweep the product into the forum state does not convert the mere act of

17   placing the product into the stream of commerce into an act purposefully directed toward the

18   forum state").

19   Plaintiffs also argue in their opposition brief that pursuant to an agreement between

20   defendant Electrolux and defendant SATL, defendant Electrolux "submitted defect claims and

21   customer complaints [related to the Microwaves] to SMCA."  (Doc. No. 213 at 10.)  Separately,

22   plaintiffs also contend that "complaints of defects are submitted to [SEC], including those from

23   California customers."  (*Id.* at 28.)  These contentions appear to be somewhat contradictory, and it

24   is unclear to the court whether any customers directly submitted Microwave-related complaints to

25   defendant SMCA.  Nevertheless, these threadbare allegations fall short of sufficiently alleging

26   that defendant SMCA "establish[ed] channels for providing regular advice to customers in the

27   forum State" in a manner that was expressly aimed at California or related to the issues and

28   products raised in this action.  *See Asahi*, 480 U.S. at 112; *see also LNS Enterprises LLC v.*

1   *Continental Motors, Inc.*, 22 F.4th 852, 863–64 (9th Cir. 2022) (finding that defendant's alleged

2   contacts with the forum state, which consisted of operating four repair shops in the forum state,

3   insufficient to confer jurisdiction where "Plaintiffs do not allege that any of these repair shops

4   worked on the engine in Plaintiffs' aircraft or the type of engine at issue in this case").

5         In short, as pled, there is no indication that defendant SMCA's conduct complained of in

6   this case—testing the Microwaves in Tennessee—was expressly aimed at California.  As alleged

7   by plaintiffs, the only contact defendant SMCA has directly had with the state of California

8   relating to the Microwaves is that "[a]fter manufacture in Thailand, these Microwaves were

9   shipped by SATL from Thailand to SMCA into the United States through the Port of Los

10   Angeles, California."  (Doc. No. 213 at 13; *see also* Doc. No. 194 at ¶ 80.)  However, plaintiff

11   has provided no authority suggesting that the mere shipment of a product through the forum state

12   is sufficient to establish that defendant SMCA expressly aimed its conduct at California.[15]

13   Accordingly, plaintiff has not established the express aiming prong of the *Calder* effects test.  *C.f.*

14   *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1059–60 (C.D. Cal. 2015) (finding that the

15   express aiming element was established where defendant used a distributor who agreed to serve

16   as a sales agent in forum state, engaged in "direct advertising aimed at" the forum state for at least

17   some of the products at issue, and issued press releases describing its distributor's activities in

18   forum state); *Loomis*, 420 F. Supp. 3d at 1070 (express aiming was established where the

19   defendant, *inter alia*, directly targeted the forum state with state-specific commercials and

20   advertisements for the product at issue).

21         As for the third and final element of the *Calder* effects test, the sufficiency of allegations

22   of harm, "'something more' than mere foreseeability" is required.  *Fred Martin Motor Co.*, 374

23   F.3d at 804–05 (quoting *Bancroft & Masters*, 223 F.3d 1082, 1087 (9th Cir. 2000)).  An action

24   taken outside the forum state with foreseeable effects within the forum state does not *per se* give

---

25   [15]  Defendant SATL asserts that the Microwaves were not shipped by SATL to the United States,

26   let alone to California, and has submitted an affidavit by a SATL employee in support of this
contention.  (Doc. No. 217 at 16; 217-2.)  However, the court need not address this factual dispute

27   because the court concludes that *even if* defendant SATL shipped the Microwaves to defendant
SMCA through the Port of Los Angeles, this fact would not confer personal jurisdiction over

28   defendants SMCA and SATL in this case.

1   rise to specific personal jurisdiction.  *Id.*  As the Supreme Court has made clear, "mere injury to a

2   forum resident is not a sufficient connection to the forum.  Regardless of where a plaintiff lives or

3   works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed

4   a contact with the forum State."  *Walden*, 571 U.S. at 290.  Accordingly, "[t]he proper question is

5   not where the plaintiff experienced a particular injury or effect but whether the defendant's

6   conduct connects him to the forum in a meaningful way."  *Id.*

7        Because plaintiffs have not alleged facts establishing that defendant SMCA expressly

8   aimed its conduct at California, the court has no basis upon which it can find that it would have

9   been foreseeable that defendant SMCA's actions in Tennessee would cause harm to plaintiff

10  Mendoza in California.  *See Maeda*, 390 F. Supp. 3d at 1246 (finding that it was foreseeable that

11  a Hawaii plaintiff would suffer harm in Hawaii, where defendant expressly aimed its conduct, but

12  it was not foreseeable that a California plaintiff would suffer harm in California, where defendant

13  did not expressly aim its conduct); *c.f. Loomis*, 420 F. Supp. 3d at 1070 (finding that it was

14  foreseeable that defendant's conduct targeted at California would cause harm in that state).

15  Notably, in their opposition plaintiffs do not provide any arguments or authority relating to the

16  third element of the *Calder* test.  Accordingly, the court finds that plaintiff have not met their

17  burden of demonstrating the elements of the *Calder* effects test,[16] and as a result, have failed to

18  

---

19  [16] Indeed, the parties do not address the "*Calder* effects test" whatsoever in their briefing on
    defendant SMCA's pending motion to dismiss, further supporting the court's conclusion that
20  plaintiffs have not met their burden in establishing purposeful direction, the first prong of the
    specific jurisdiction analysis.  Nor, in the alternative, do plaintiffs address—or even mention—the
21  legal standards of a purposeful availment analysis.  Instead, plaintiffs rely on the general list of
    contacts between defendant SMCA and the state of California described above.  (*See* Doc. No.
22  213 at 28–29.)  Thus, even if the court were to analyze specific jurisdiction in this case under a
    purposeful availment test, plaintiffs would similarly fail to meet their burden of establishing the
23  first prong of the specific jurisdiction analysis.  *See, e.g.*, *Kellman v. Whole Foods Market, Inc.*,
    313 F. Supp. 3d 1031 (N.D. Cal. 2018) ("The plaintiffs do not establish that [defendants]
24  purposefully directed any of their activities or consummated some transaction with California or a
    California resident or performed some act by which they purposefully availed themselves of
25  conducting activities in California."); *LNS Enterprises LLC v. Continental Motors, Inc.*, 464 F.
    Supp. 3d 1065, 1075 (D. Ariz. 2020), *aff'd on other grounds*, 22 F. 4th 852 (9th Cir. 2022)
26  (purposeful availment requirement was not met where, *inter alia*, defendant's contacts with the
    forum state do not relate to the claims at issue and the defendant does not target customers in
27  forum state).

28  
                                    28

allege facts establishing that defendant SMCA purposefully directed its activities toward

California.

ii.     Claim Arises out of or Relates to Forum-Related Activities

To satisfy the second prong of the specific jurisdiction analysis, plaintiffs must show that

their claims arise out of or relate to the non-resident defendant's forum-related activities. *Bristol-*

*Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, ⸻ U.S. ⸻, 137 S. Ct.

1773, 1780 (2017); *Picot*, 780 F.3d at 1211.  The Supreme Court recently provided the following

guidance with regard to this prong:

> The first half of that standard asks about causation; but the back half,
> after the "or," contemplates that some relationships will support
> jurisdiction without a causal showing.  That does not mean anything
> goes.  In the sphere of specific jurisdiction, the phrase 'relate to'
> incorporates real limits, as it must to adequately protect defendants
> foreign to a forum.  But again, we have never framed the specific
> jurisdiction inquiry as always requiring proof of causation—
> i.e., proof that the plaintiff 's claim came about because of the
> defendant's in-state conduct.

*Ford Motor Co. v. Montana Eighth Judicial District Court*, ⸻ U.S. ⸻, 141 S. Ct. 1017, 1026

(2021) ("*Ford Motor*").  In other words, "although the plaintiff's claims must arise out of or relate

to the defendant's contacts with the forum, a strict causal relationship between the defendant's

activities in the forum and the harm is not required."  *Wesch v. Yodlee, Inc.*, No. 3:20-cv-05991-

SK, 2021 WL 3486128, at *5 (N.D. Cal. Aug. 5, 2021) (citing *Ford Motor*, 141 S. Ct. at 1025-

26).  Rather, "there must be 'an affiliation between the forum and the underlying controversy,

principally, [an] activity or an occurrence that takes place in the forum State and is therefore

subject to the State's regulation.'"[17]  *Ford Motor*, 141 S. Ct. at 1025 (quoting *Bristol-Myers*

---

[17]  Before the Supreme Court's decision *Ford Motor*, courts in the Ninth Circuit required a
showing of but-for causation, i.e., but for defendant's alleged contacts and activities, plaintiff's
cause of action would not have arisen.  *Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec.
Appliance Co.*, No. 3:18-cv-823-JLS-JLB, 2021 WL 3493094, at *10 (S.D. Cal. Aug. 6, 2021)
("[C]ourts within the Ninth Circuit have traditionally applied a 'but for' test to determine whether
a claim 'arises out of or relates to' a defendant's contacts with a forum."); *Clarke v. Dutton
Harris & Co., PLLC*, No. 2:20-cv-00160-JAD-BNW, 2021 WL 1225881, at *4 (D. Nev. Mar. 31,
2021) ("Historically, courts in the Ninth Circuit exclusively relied on a 'but for' test to determine
whether a particular claim arises out of forum-related activities.  But the Supreme Court appears
to have recently done away with that approach in [*Ford Motor*].").

1   *Squibb*, 137 S. Ct. at 1780).

2          Notably, the parties fail to explicitly address this element at all in their briefing on

3   defendant SMCA's pending motion to dismiss.  However, the court does note that plaintiffs'

4   general allegations that SEC controls defendant SMCA and maintains multiple offices in

5   California cannot confer specific jurisdiction in this case, because plaintiffs have failed to draw

6   any connection between SEC's operations in California and defendant SMCA's alleged conduct

7   in this action, which consists of conducting compliance testing in Memphis, Tennessee on some

8   of the Microwaves.  (*See* Doc. No. 194 at ¶ 15); *see Zieger v. WellPet LLC*, 304 F. Supp. 3d 837,

9   849 (N.D. Cal. 2018) (declining to exercise personal jurisdiction where a defendant's contacts

10  with forum state consisted of having previously brought suit in the state and having employees in

11  the state because "[t]hese general allegations are wholly unrelated to the present litigation and

12  cannot give rise to specific jurisdiction here"); *Cahen*, 147 F. Supp. 3d at 962 (finding the

13  exercise of specific jurisdiction not appropriate in California where "none of [plaintiff's] claims is

14  tied to [defendant's] activities in California"); *Jones v. Medtronic Inc.*, 411 F. Supp. 3d 521, 529–

15  30 (D. Ariz. 2019), *aff'd*, 830 Fed. App'x. 925 (9th Cir. 2020) ("[T]he fact that one or all of the

16  Defendants prospectively transact business in [the forum state] is insufficient for the Court to find

17  that [defendant] surrendered to personal jurisdiction in this case.").  Although plaintiffs assert that

18  the Microwaves pass through the Port of Los Angeles on their shipment route from Thailand to

19  Tennessee, as noted above, plaintiffs have provided no authority suggesting that the mere

20  shipment of products through a port in the forum state is a sufficient "affiliation between the

21  forum and the underlying controversy."  *Goodyear*, 564 U.S. at 919 (citation omitted).  Therefore,

22  the court concludes that plaintiffs have not established that their claims arise out of or relate to

23  defendant SMCA's California-related activities.  *See LNS Enterprises*, 464 F. Supp. At 1075

24  ("Because nothing in the record meaningfully connects [defendant's] suit related activities to

25  Arizona, or even Plaintiffs' aircraft, the Court finds exercising personal jurisdiction over it

26  inappropriate."); *Picot*, 780 F.3d at 1215 (finding that "none of [defendant's] challenged conduct

27  had anything to do with [California] itself" where the defendant's suit-related conduct was all

28  conducted "from his residence in Michigan, without entering California, contacting any person in

1  California, or otherwise reaching out to California"); *Sturdy Gun Safe, Inc. v. Rhino Metals, Inc.*,

2  No. 1:18-cv-01452-DAD-BAM, 2019 WL 652862, at *5 (E.D. Cal. Feb. 15, 2019) ("Notably,

3  [plaintiff] fails to address this element at all in its opposition to the pending motion.  Absent a

4  showing that [plaintiff's] claims in this action arise out of [defendant's] marketing and sales

5  activities in California, the court concludes that the second element of the specific jurisdiction

6  analysis has not been met.").

7        Thus, the court finds that, as alleged, defendant SMCA's actions in this case do not

8  connect it with California in a way sufficient to support the assertion of personal jurisdiction over

9  it.  *See Picot*, 780 F.3d at 1215.

10                              iii.       Reasonableness

11        "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the

12  plaintiff bears the burden of establishing that jurisdiction is proper."  *Boschetto v. Hansing*, 539

13  F.3d 1011, 1015 (9th Cir. 2008).  Having failed to satisfy the first two prongs of the specific

14  jurisdiction analysis, plaintiffs have failed to establish that defendant SMCA is subject to personal

15  jurisdiction in California for the claims asserted in the FAC.  Accordingly, the court need not

16  address reasonableness, the third element of the specific jurisdiction analysis.

17              4.       Personal Jurisdiction as to Defendant SATL

18        In their FAC, plaintiffs plead that defendant SATL is a division of SEC and is "located" in

19  Thailand.  (Doc. No. 194 at ¶ 74.)  In its reply in support of its pending motion to dismiss,

20  defendant SATL clarifies that it is "undisputed [that] SATL is a company organized and located

21  in the Kingdom of Thailand, and it delivered certain of the microwaves at issue to the Port of

22  Thailand."  (Doc. No. 217 at 16.)  Thus, the parties do not appear to dispute that defendant SATL

23  is not a California citizen.

24        Defendant SATL argues that this court lacks personal jurisdiction over it.  (Doc. No. 206

25  at 27.)  Plaintiffs' arguments in this regard are nearly identical to the arguments they have

26  advanced with respect to personal jurisdiction over defendant SMCA; in plaintiff's consolidated

27  opposition to the motions to dismiss filed by defendants SMCA and SATL, plaintiffs do not

28  distinguish between their arguments in support of the exercise of personal jurisdiction in

1    California over defendants SMCA and SATL.  (*See* Doc. No. 213 at 27–29.)  Thus, the court's

2    analysis set forth above addressing whether the court may exercise personal jurisdiction over

3    defendant SMCA is likewise applicable to the question of whether the court may exercise

4    personal jurisdiction over defendant SATL.

5           The only distinct jurisdictional argument plaintiffs make with regard to defendant SATL

6    that has not already been addressed by the court above is plaintiffs' contention that "[p]ersonal

7    jurisdiction over SATL also exists based on SMCA's operation as its alter-ego."  (Doc. No. 213 at

8    29.)  However, this argument is foreclosed by this court's conclusion that it lacks personal

9    jurisdiction over defendant SMCA—i.e., even if defendant SATL were the alter-ego of defendant

10   SMCA, this fact would not matter, because the court lacks jurisdiction over defendant SMCA.

11   Because, apart from this alter-ego argument, plaintiffs do not raise any additional arguments as to

12   why this court may exercise jurisdiction over defendant SATL, the court concludes that plaintiffs

13   have failed to establish that defendant SATL may be subject to general or specific personal

14   jurisdiction in California for the claims asserted against that defendant in the FAC.

15          5.    Jurisdictional Discovery

16          In their opposition to defendants SMCA's and SATL's motions to dismiss, plaintiffs

17   argue that if this court does not conclude that personal jurisdiction exists in California as to

18   SMCA and SATL, plaintiffs "should be permitted limited jurisdictional discovery."  (Doc. No.

19   213 at 29.)

20          Discovery should ordinarily be granted where "pertinent facts bearing on the question of

21   jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."

22   *Butcher's Union Local No. 498, United Foods & Commercial Workers v. SDC Inv., Inc.*, 788

23   F.2d 535, 540 (9th Cir.1986) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280,

24   1285 n.1 (9th Cir. 1977)).  "Where a plaintiff's claim of personal jurisdiction appears to be both

25   attenuated and based on bare allegations in the face of specific denials made by defendants, the

26   Court need not permit even limited discovery."  *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562

27   (9th Cir. 1995) (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988) (internal

28   quotation marks omitted); *see also Boschetto*, 539 F.3d at 1020 (affirming the denial of a request

1   for jurisdictional discovery "based on little more than a hunch that [discovery] might yield

2   jurisdictionally relevant facts").  Thus, limited discovery should not be permitted to conduct a

3   "fishing expedition."  *Mackovich v. United States*, No. 1:06-cv-00422-SMS (PC), 2008 WL

4   2053978, at *1 (E.D. Cal. May 13, 2008) (denying discovery where plaintiff made "no showing

5   that if further discovery were allowed, the outcome of the motion to dismiss would be affected")

6   (citing *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)).

7        Here, plaintiffs have not met their burden of establishing the existence of personal

8   jurisdiction over defendants SMCA or SATL.  Moreover, plaintiffs have not explained how

9   limited discovery would likely reveal contacts that would give rise to general or specific personal

10  jurisdiction over these defendants.  Indeed, plaintiffs do not provide any argument or explanation

11  whatsoever for their request to conduct jurisdictional discovery.  Plaintiffs have therefore not

12  established that jurisdictional discovery is justified in this case, and the court will not permit the

13  entirely speculative discovery plaintiffs seek.  *See Scanlon v. Curtis Int'l*, 465 F. Supp. 3d 1054,

14  1067–68 (E.D. Cal. 2020) (denying a request for jurisdictional discovery based on the mere

15  speculation that discovery might reveal facts that support personal jurisdiction).

16  **C.      Failure to State a Claim Pursuant to Rule 12(b)(6)**

17        Having concluded that the court lacks personal jurisdiction over defendants SMCA and

18  SATL, the court will not address defendants' arguments advanced in support of their motion

19  brought pursuant to Rule 12(b)(6).  Accordingly, the remainder of defendants SMCA's and

20  SATL's motions to dismiss (Doc. Nos. 196, 198) are denied as having been rendered moot by this

21  order.

22  **D.      Leave to Amend**

23        Plaintiffs have requested leave to amend their FAC in the event the court grants

24  defendants SMCA's and SATL's motions to dismiss.  (Doc. No. 213 at 14.)  "Courts are free to

25  grant a party leave to amend whenever 'justice so requires,' and requests for leave should be

26  granted with 'extreme liberality.'"  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009)

27  (quoting Fed. R. Civ. P 15(a)(2) and *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708,

28  712 (9th Cir. 2001)).  There are several factors a district court considers in determining whether

1    to grant leave to amend, including undue delay, the movant's bad faith or dilatory motive,

2    repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

3    opposing party, and futility.  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir.

4    2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Of the factors from *Foman*, the court

5    should particularly consider prejudice to the opposing party.  *Id.*; *Eminence Cap., LLC v. Aspeon,*

6    *Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

7              There is no indication that allowing amendment in this case would be prejudicial to

8    defendants, and defendants make no argument to that effect.  There is also nothing to suggest that

9    plaintiffs have acted in bad faith.  Although the court has denied plaintiffs leave to conduct

10   jurisdictional discovery based on the lack of any showing by plaintiffs that such discovery is

11   warranted in this case, it appears conceivable to the court that plaintiffs are in possession of facts

12   from the greater than five years of litigation of this case that could allow them to address the

13   jurisdictional deficiencies identified by the court in this order in a second amended complaint.

14   For this reason, and because plaintiffs have not previously attempted to cure deficiencies

15   identified by this court through amendments[18] and there is no jurisdiction to which it would be

16   proper for this court to transfer this action at this time,[19] plaintiffs will therefore be granted leave

17   to amend.

18   /////

19   /////

20

21   [18]  The court notes that although the FAC is the first amended complaint by plaintiffs in this court
     against defendants SMCA and SATL, the court notes that the FAC is the *fourth* complaint filed
22   by plaintiffs since they commenced this action.  (*See* Doc. Nos. 1, 59, 194; *Rice*, No. 4:15-cv-
     00371-MWB, Doc. No. 173.)  Nonetheless, this order is the first order by *this court* that addresses
23   defendants' SMCA's and SATL's arguments pertaining to a purported lack of standing and
     personal jurisdiction.
24

25   [19]  Pursuant to 28 U.S.C. § 1631, if a "court finds that there is want of jurisdiction, the court shall,
     if it is in the interest of justice, transfer such action or appeal to any other such court in which the
26   action or appeal could have been brought at the time it was filed[.]"  *See Miller v. Hambrick*, 905
     F.2d 259, 262 (9th Cir. 1990) (holding that district court's failure to exercise its discretion under §
27   1631 constitutes an abuse of discretion).  Here, the court finds that transfer would not be in the
     interest of justice, since the allegations of plaintiffs' FAC make it unclear in which court, if any,
28   this action could have been properly brought at the time it was filed.

                                                34

**CONCLUSION**

For the reasons stated above:

1.  Defendants SMCA's and SATL's motions to dismiss (Doc. Nos. 196, 198) plaintiffs' claims for lack of standing are granted as to plaintiffs' request for injunctive relief only and otherwise denied;

2.  Defendant SMCA's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction (Doc. No. 196) is granted with leave to amend;

3.  Defendant SATL's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction (Doc. No. 198) is granted with leave to amend;

4.  Defendants SMCA's and SATL's motions to dismiss (Doc. Nos. 196, 198) for failure to state a cognizable claim under Rule 12(b)(6) are denied as having been rendered moot by this order;

5.  The motions to dismiss filed by defendants Midea China, Midea America, Electrolux, Lowes, and Modesto (Doc. Nos. 199, 201, 202) remain pending;

6.  Plaintiffs shall file an amended complaint, if any, within twenty-one (21) days of the date of service of the court's order resolving the last of the currently pending motions to dismiss (Doc. Nos. 199, 201, 202) in this case; and

7.  The Clerk of the Court is directed to reassign this case to U.S. District Judge Ana I. de Alba for all further proceedings before the district court. The parties are advised that all future filings in this case in this district court shall bear the new case number of 1:20-cv-001133-ADA-BAM.

IT IS SO ORDERED.

Dated:   **September 6, 2022**

                                                    UNITED STATES DISTRICT JUDGE