1
2
3
4
5
6
7

8               UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  ERIKA MENDOZA, et al., an individual,          No.  1:20-cv-1133-TLN-CKD
    on behalf of herself and all others similarly
12  situated,

13                      Plaintiffs,                **ORDER**

14          v.

15  MIDEA MICROWAVE AND
    ELECTRICAL APPLIANCES
16  MANUFACTURING CO. LTD, et al.,

17                      Defendants.

18

19          This matter[1] is before the Court on Defendant Midea Microwave and Electrical

20  Appliances Manufacturing Co., Ltd.'s ("Midea China") Motion to dismiss.  (ECF No. 199.)

21  Plaintiffs Erika Mendoza and James Hunt (collectively, "Plaintiffs") filed an opposition.  (ECF

22  No. 212.)  Midea China filed a reply.  (ECF No. 222.)  For the reasons set forth below, the Court

23  GRANTS Midea China's motion.

24

25  _____
    [1]       The Court acknowledges the delay in the issuance of this Order.  The overwhelming
26  caseload in the Eastern District of California has been well publicized.  On September 13, 2023,
    Chief Judge Kimberly J. Mueller reassigned this action to the undersigned following the
27  appointment of Judge Ana de Alba to the Ninth Circuit Court of Appeals.  The Court prioritized
    resolution of the pending motions to dismiss in this action.
28

                                          1

Also before the Court is Defendant Midea America Corp.'s ("Midea America")[2] Motion to Dismiss.  (ECF No. 201.)  Plaintiffs filed an opposition.  (ECF No. 212.)  Midea America filed a reply.  (ECF No. 220).  For the reasons set forth below, the Court GRANTS Midea America's motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court need not recount all background facts as they are fully set forth in the Court's September 6, 2022, order.  (ECF No. 240.)  In short, Plaintiffs are California residents who allegedly suffered economic injury as the result of defective "over-the-range" ("OTR") microwaves, whose handles reached unsafe temperatures while the cooking surface below was in use (the "handle defect").  (ECF No. 194 at 2, 4, 6.)  Plaintiffs allege Midea China, a manufacturing company incorporated and with its principal place of business in China, manufactured several of the microwaves at issue (the "Microwaves").  (*Id*. at 8.)  According to Plaintiffs, Midea China performed product testing on the Microwaves before shipping them to the United States, which showed the Microwaves' handles reached unsafe temperatures while the cooking surface below was in use.  (*Id*. at 9.)  Plaintiffs also allege Midea America, a company incorporated in Florida with its principal place of business in New Jersey, conducted product testing on the Microwaves and knew of the handle defect.  (*Id*. at 6, 12.)  Both Midea China and Midea America are a part of Midea Group Co. Ltd. ("Midea Group").  (ECF No. 212 at 18.)

Plaintiffs initiated this putative class action on May 19, 2017, in Stanislaus County Superior Court against Electrolux Home Products Inc. ("Electrolux"), a distributor of the Microwaves.  (ECF No. 1.)  Electrolux removed this action to federal court and moved to transfer venue to the Middle District of Pennsylvania.  (ECF No. 1 at 2; ECF No. 4 at 50.)  Venue was transferred to the Middle District of Pennsylvania, where the court consolidated this action with related actions pending in that district, *Rice v. Electrolux Home Products, Inc.*, No. 4:15-cv-00371-MWB, and *Mauro v. Electrolux Home Products, Inc.*, Case No. 4:18-cv-00539-MWB.  (ECF No. 153 at 2.)  On October 3, 2018, Plaintiffs filed an amended consolidated class action

---

[2]     The action involves eight named Defendants and ten Doe Defendants.  Only Midea China and Midea America are parties to the instant motions.

complaint against Electrolux, Midea China, Midea America, Modesto Direct Appliance ("Modesto"), Lowe's Home Centers, LLC ("Lowe's"), Sharp Appliances Thailand Limited ("SATL"), and Sharp Manufacturing Company of America ("SMCA") (collectively, "Defendants").  *Rice*, No. 14:15-cv-00371-MWB, ECF No. 173.  On August 13, 2020, the Middle District of Pennsylvania transferred this action back to the Eastern District of California.  (ECF No. 155.)

On November 13, 2020, Plaintiffs filed the operative First Amended Complaint ("FAC"), alleging Defendants violated California's Consumer Legal Remedies Act ("CLRA"), California's Unfair Competition Law ("UCL"), and the Song-Beverly Consumer Warranty Act ("Song-Beverly Act").  (ECF No. 194.)  On November 30, 2020, Midea China, SAMC, SATL, and Midea America each filed separate motions to dismiss, and Electrolux, Lowe's, and Modesto filed a joint motion to dismiss.  (ECF Nos. 196, 198, 199, 201, 202.)  On September 6, 2022, the Court granted SMCA's and SATL's motions to dismiss (ECF Nos. 196, 198) Plaintiffs' claims for lack of standing as to Plaintiffs' claims for injunctive relief only.  (ECF No. 240.)  The Court also granted SMCA's and SATL's motion to dismiss (ECF Nos. 196, 198) under Rule 12(b)(2) for lack of personal jurisdiction with leave to amend.  (ECF No. 240.)

In Midea China and Midea America's instant motions to dismiss, both move to dismiss Plaintiffs' FAC under Federal Rule of Civil Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a cognizable claim.  (ECF No. 199-1 at 7.) Because the Court GRANTS both motions under Rule 12(b)(2) for lack of personal jurisdiction, the Court need not and does not address Midea China and Midea America's remaining arguments regarding Rule 12(b)(6).

## II.   WRIT OF MANDAMUS

As an initial matter, the Court will briefly address the procedural history in this action relevant to the personal jurisdiction issue.  In September 2020, SMCA, SATL, Midea China, and Midea America filed petitions for a writ of mandamus in the U.S. Court of Appeals for the Third Circuit, challenging the order of the Middle District of Pennsylvania transferring this action to this Court.  *See In re Sharp Mfg. Co. Am.*, No. 20-3039, Doc. Nos. 1, 18; *In re Sharp Appliances*

*Thailand Ltd.*, No. 20-2807 (3d. Cir.), Doc. Nos. 1, 30; *In re Midea Microwave & Electrical Appliances Mfg. Co. Ltd.*, No. 20-2806 (3d. Cir.), Doc. Nos. 1, 36; *In re Midea America Corp.*, No. 20-2914 (3d. Cir.), Doc. Nos. 1, 25.  The Third Circuit denied the petitions, holding  "any error committed by the District Court was not so clear as to warrant the extraordinary remedy of mandamus."  *In re Sharp Mfg. Co. Am.*, No. 20-3039 (3d. Cir.), Doc. No. 18 at 2.  On the issue of personal jurisdiction, the Third Circuit stated:

> We note that, in transferring the case, the District Court [for the Middle District of Pennsylvania] concluded that the plaintiffs made a "prima facie showing" that the transferee court [in the Eastern District of California] has personal jurisdiction over the petitioning defendants. In its transfer order, however, the District Court emphasized that it held plaintiffs only to a "light" burden on that issue and expressly provided that defendants could "further challenge the jurisdictional issue in the Eastern District of California." Thus, we do not read the District Court's order as deciding the issue of personal jurisdiction in a way that constitutes law of the case in the transferee court under *Christianson v. Colt Industries Operating Co.*, 486 U.S. 800, 816–17 (1988).

*Id.*

Accordingly, the Court finds it is appropriate to address whether the Court has personal jurisdiction over Midea China and Midea America.

### III.   STANDARD OF LAW

Rule 12(b)(2) allows a party to file a motion to dismiss for lack of personal jurisdiction. When there is no federal statute authorizing personal jurisdiction, the district court applies the law of the state in which the district court sits.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  This Court sits in California, and California's long-arm statute is coextensive with federal due process requirements.  Cal. Civ. Proc. Code § 410.10.  Accordingly, the "jurisdictional analyses under state law and federal due process are the same."  *Mavrix Photo*, 647 F.3d at 1223 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (2004)).

The traditional bases for exercising personal jurisdiction are: (1) service of process in the forum state; (2) domicile within the forum state at the time the action is commenced; or (3) consent to jurisdiction in the forum state.  *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873,

880 (2011).  However, "[f]or a court to exercise personal jurisdiction over a nonresident

defendant, that defendant must have at least 'minimum contacts' with the relevant forum such

that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial

justice.'"  *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

316(1945)).  Under the minimum contacts test, there are two categories of personal jurisdiction:

general jurisdiction and specific jurisdiction.  *Daimler AG v. Bauman*, 571 U.S. 117, 126–27

(2014).

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff

bears the burden of establishing the court's jurisdiction over the defendant.  *Wash. Shoe Co. v. A–

Z Sporting Goods Inc.*, 704 F.3d 668, 671–72 (9th Cir. 2012).  However, when the defendant's

motion is based on written materials rather than an evidentiary hearing, the plaintiff need only

make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Id.*

(quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)).  The Court resolves

all disputed facts in favor of the plaintiff.  *Id.* at 672.

## IV.  MIDEA CHINA'S MOTION TO DISMISS

Midea China asserts the Court should grant its motion under Rule 12(b)(2) because the

Court lacks personal jurisdiction over Midea China.  (ECF No. 199-1 at 17.)  In its briefing,

Plaintiffs do not allege Midea China waived or consented to personal jurisdiction in California or

that the Court has general personal jurisdiction over Midea China.  (*See* ECF No. 212 at 13–18.)

Instead, Plaintiffs assert the Court has specific personal jurisdiction over Midea China.  (*Id.* at

13.)

### A.  Specific Jurisdiction

Specific jurisdiction is satisfied when the defendant's activities are directed toward the

forum state and the defendant's liability arises out of or relates to those activities.  *Daimler*, 571

U.S. at 127.  In the Ninth Circuit, courts employ a three-part test to determine whether a

defendant's contacts suffice to establish specific jurisdiction: "(1) the nonresident defendant must

have purposefully availed himself of the privilege of conducting activities in the forum by some

affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the defendant's

forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 620–21 (9th Cir. 1991).  The plaintiff bears the burden of satisfying the first two prongs, and if they are met, the burden shifts to the defendant "to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Mavrix Photo*, 647 F.3d at 1227–28 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The first step of the three-part specific jurisdiction test addresses the directionality and intent of a defendant's conduct by examining whether a defendant has "purposefully availed" itself of or "purposefully directed" its conduct at or to the forum.  Where, as here, a case is based on an alleged tort, courts in the Ninth Circuit employ a purposeful direction analysis under the three-part *Calder* "effects" test.  *See Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603–04 (9th Cir. 2018) (citing *Calder v. Jones*, 465 U.S. 783, 791 (1984)).  Under the *Calder* test, a plaintiff must allege a defendant: "(1) committed an intentional act[;] (2) expressly aimed at the forum state[;] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

*i.   Intentional Act*

Under the first element, a defendant commits an intentional act when the defendant acts with "the intent to perform an actual, physical act in the real world." *Fred Martin Motor Co.*, 374 F.3d at 806.  In the instant case, the Court finds Plaintiffs have sufficiently alleged Midea China committed an intentional act by manufacturing and performing product testing on the Microwaves, which were later sold by Midea China to Electrolux for distribution in the United States.  (ECF No. 194 at 5, 8–9); *see, e.g.*, *Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1246 (D. Haw. 2019) (alleged deceptive labeling of a snack product sold in the forum state constitutes an intentional act); *Loomis v. Slendertone Dist., Inc.*, 420 F. Supp. 3d 1046, 1068 (S.D. Cal. 2019) (development, advertising, and sale of a product constitutes intentional act).

*ii.   Contacts with Forum State*

Under the second element, Plaintiffs must allege Midea China's "allegedly tortious act was expressly aimed at the forum state." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).  The express aiming requirement is not satisfied merely "by a defendant's knowledge that harm

1    may be inflicted on a plaintiff in a particular forum." *AMA Multimedia, LLC v. Wanat*, 970 F.3d

2    1201, 1209 n.5 (9th Cir. 2020).  Rather, a court's inquiry should focus on the "defendant's

3    contacts with the forum state itself, not the defendant's contacts with the persons who reside

4    there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

5          In the instant case, Plaintiffs first argue Midea China expressly aimed its conduct at

6    California because "Midea China intentionally manufactured the Microwaves for distribution in

7    the United States, including California, as 'Over-the Range' Microwaves while knowingly

8    concealing the Handle Defect."  (ECF No. 212 at 16.)  Put differently, Plaintiffs argue Midea

9    China aimed its conduct at California because Midea China placed the Microwaves it

10   manufactured into the stream of commerce.  However, the Ninth Circuit has not adopted the

11   "stream of commerce" theory.  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459

12   (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (In the

13   Ninth Circuit, "[t]he placement of a product into the stream of commerce, without more, is not an

14   act purposefully directed toward a forum state.")); *Walsh v. LG Chem Ltd.*, 834 F.App'x 310 (9th

15   Cir. 2020) ("This is particularly true where … [a plaintiff] only identifies actions directed at the

16   entire United States market, rather than the relevant forum.").

17         Rather, a plaintiff must allege additional conduct beyond merely placing a product in the

18   stream of commerce.  *Holland*, 485 F.3d at 459.  This conduct may include "designing the

19   product for the market in the forum State, advertising in the forum State, establishing channels for

20   providing regular advice to customers in the forum State, or marketing the product through a

21   distributor who has agreed to serve as the sales agent in the forum state."  *Asahi*, 480 U.S. at 112.

22   Plaintiffs have not alleged Midea China engaged in any of these activities.  While Plaintiffs

23   contend Midea China knew the Microwaves would be sold in California because the Microwaves

24   included a warning stating, "[t]he California Safe Drinking Water and Toxic Enforcement Act

25   requires the Governor of California to publish a list of substances known to the state to cause

26   cancer, birth defects, or other reproductive harm and requires businesses to warn customers of

27   potential exposure to such substances," this warning hardly suggests Midea China designed or

28   marketed the Microwaves for sale in California.  (*See* ECF No. 212 at 16.)  As stated in the

Court's September 6, 2022 Order, "[a]t most, the inclusion of this warning demonstrates compliance with a state law and a possible awareness … that the product could end up being sold in California."  (ECF No. 240 at 26.)  However, "defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Holland*, 485 F. 3d at 459.

Additionally, Plaintiffs argue Midea China purposefully directed the Microwaves toward California because "Midea China entered into a contract with [Underwriter Laboratories] concerning the Microwaves."  (ECF No. 212 at 16.)  According to Plaintiffs, "Midea China conducted and submitted all [Underwriter Laboratories] testing on behalf of Electrolux to [Underwriter Laboratories] for certification and sale in the United States."  (ECF No. 194 at 14.) "[I]n certifying the Microwaves' compliance with [Underwriter Laboratories] for sale in the United States, including California," Plaintiffs allege Midea China purposefully directed its conduct at California.  (ECF No. 212 at 16.)  However, once again, Plaintiffs allegations are unavailing as they demonstrate nothing more than Midea China's awareness that the Microwaves would be sold in the United States.  Certifying its product for sale in the United States alone, does not demonstrate that Midea China purposefully targeted California.  *See Holland*, 485 F. 3d at 459.  Thus, the Court finds Plaintiffs have not sufficiently alleged Midea China expressly aimed any of its conduct at California.

*iii.   Knowledge*

With regards to the third element, Plaintiffs argue Midea China knew the Microwaves were likely to cause harm in California because, like the defendant in *Monje v. Spinmaster*, Midea China was actively involved in the manufacturing and testing of the Microwaves and selected a distributor to sell the Microwaves in the United States.  CV091713PHXGMS 2013 WL 236988 at *7–9 (D. Ariz. May 29, 2013); (ECF No. 212 at 16–17.)  However, Plaintiffs' reliance on *Monje* is unpersuasive.  In *Monje*, the court exercised specific personal jurisdiction over an Australian company who was "involved in every aspect [of the product] from design, to manufacture, to distribution."  *Monje*, 2013 WL 236988 at *21.  The Australian company controlled the

distribution process by supplying the distributor with "a wealth of marketing material" and "reach[ing] out to potential customers in the United States and invit[ing] them to try its product." *Id*. at *23–24.  In contrast, Plaintiffs have not alleged Midea China exercised such control over the distribution of the Microwaves in California.  The FAC makes clear Midea China manufactured the Microwaves in China, tested the Microwaves in China, and delivered the Microwaves to Electrolux in China for distribution.  (ECF No. 194 at 13–16.)  Nowhere in the FAC do Plaintiffs allege Midea China retained control over the distribution of the Microwaves once Midea China sold the Microwaves to Electrolux in China.  Thus, the Court finds there is no evidence which establishes it was foreseeable to Midea China that its actions in China would cause harm to Plaintiffs in California.

Accordingly, the Court finds Plaintiffs have not met their burden in demonstrating the elements of the *Calder* effects test, and as a result, fail to sufficiently allege Midea China purposefully directed its actions at California.  As such, Plaintiffs fail step one of the of the specific personal jurisdiction test, and the Court need not proceed to steps two and three.

Therefore, the Court GRANTS Midea China's motion to dismiss under Rule 12(b)(2).  Although the Court has serious doubts as to Plaintiffs' ability to cure the deficiencies in the FAC, the Court will give Plaintiffs an opportunity to amend based on the liberal standard in favor of granting leave to amend.  *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) ("Courts are free to grant a party leave to amend whenever justice so requires, and request for leave should be granted with extreme liberality.").  However, the Court cautions Plaintiffs that any amended complaint must cure the above-outlined deficiencies "without contradicting any of the allegations of [the] [FAC]."  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).  In other words, any subsequently amended complaint must not allege facts inconsistent with the FAC.  *Id*. at 296–97.

## V.    MIDEA AMERICA'S MOTION TO DISMISS

Midea America also asserts the Court should grant its motion under Rule 12(b)(2) because the Court lacks personal jurisdiction over Midea America.  (ECF No. 201-1 at 12.)  In opposition, Plaintiffs do not argue Midea America waived or consented to personal jurisdiction in California

or that the Court has general personal jurisdiction over Midea America.  (*See* ECF No. 212 at 17–18.)  Instead, Plaintiffs argue this Court has specific jurisdiction over Midea America because Midea America is the alter-ego of Midea China.  (*Id.*)

"A party seeking to establish jurisdiction over a person or entity can either: (1) show each defendant's sufficient, direct contacts with the forum state, or (2) use the alter ego theory to 'extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate.'"  *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).  Thus, under the alter ego theory, a Court may attribute one entity's contacts with a forum state to its parent company or subsidiary when certain conditions are met.  *Ranza*, 793 F.3d at 1072–73.

As previously discussed, Plaintiffs have not sufficiently alleged Midea China had sufficient minimum contacts with California to establish personal jurisdiction.  Therefore, Plaintiffs cannot argue the Court has personal jurisdiction over Midea America because it is the alter ego of Midea China.

Accordingly, the Court GRANTS Midea China's motion to dismiss under Rule 12(b)(2) with leave to amend.

**VI.   JURISDICTIONAL DISCOVERY**

Plaintiffs request the Court allow them to conduct limited jurisdictional discovery should the Court find it does not have personal jurisdiction over Midea China and Midea America.  (ECF No. 212 at 18.)  Discovery is ordinarily granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  *Butcher's Union Local No. 498, United Foods & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)).  However, "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery."  *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988) (internal quotation marks omitted).  Thus, limited discovery should not be permitted to

1    conduct a "fishing expedition."  *Mackovich v. United States*, No. 1:06-cv-00422-SMS (PC), 2008

2    WL 2053978, at *1 (E.D. Cal. May 13, 2008) (denying discovery where plaintiff made "no

3    showing that if further discovery were allowed, the outcome of the motion to dismiss would be

4    affected").

5            In the instant case, the Court finds granting Plaintiffs' request for jurisdictional discovery

6    would be futile.  Not only have Plaintiffs failed to identify how limited discovery would likely

7    reveal Midea China and Midea America had contacts with California that would give rise to

8    personal jurisdiction, but Plaintiffs have also failed to provide any argument or explanation as to

9    why limited jurisdictional discovery is warranted.  Moreover, while this action was before the

10   Middle District of Pennsylvania, Plaintiffs also asked the court for jurisdictional discovery, which

11   the court denied because "Plaintiffs have already had years to conduct this discovery."  *Rice*, 15-

12   CV-00371-MWB, ECF No. 247 at 28 ("Where a plaintiff had the opportunity to conduct

13   jurisdictional discovery, and then fails to make out a prima facie case of personal jurisdiction,

14   courts are entitled to deny the plaintiff's request for further jurisdictional discovery.")  Thus,

15   Plaintiffs had the opportunity to conduct jurisdictional discovery before filing the operative

16   complaint and still failed to establish a prima facie case of personal jurisdiction.

17           Accordingly, the Court DENIES Plaintiffs' current request for jurisdictional discovery.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**VII.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Midea China and Midea America's Motions to Dismiss.  (ECF Nos. 199, 201.)  Plaintiffs may file an amended complaint no later than twenty-one (21) days from the electronic filing date of the Court's order resolving the last of the currently pending motions to dismiss in this action.  Midea China and Midea America shall file responsive pleadings no later than twenty-one (21) days from the electronic filing date of Plaintiffs' amended complaint.  If Plaintiffs opt to not amend their complaint with regards to the Court's personal jurisdiction over Midea China and Midea America, then the Court will dismiss Midea China and Midea America from this action.

IT IS SO ORDERED.

Date:  December 7, 2023

Troy L. Nunley
United States District Judge

12